ACCEPTED
03-15-00401-CV
6493720
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/13/2015 6:32:28 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00401-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT
## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/13/2015 6:32:28 PM
JEFFREY D. KYLE
Clerk

## IN RE XEROX CORPORATION AND XEROX STATE HEALTHCARE, LLC F/K/A ACS STATE HEALTHCARE, LLC,
### Relators

On Petition for Writ of Mandamus
Original Proceeding from the 53rd Judicial District Court
Travis County, Texas, Cause No. D-1-GV-14-000581
The Honorable Stephen Yelenosky, Presiding

## BRIEF IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

RAYMOND C. WINTER
Assistant Attorney General
Chief, Civil Medicaid Fraud Division
Raymond.Winter@texasattorneygeneral.gov
State Bar No. 21791950
REYNOLDS B. BRISSENDEN
Assistant Attorney General
Managing Attorney, Civil Medicaid Fraud
Division
Reynolds.Brissenden@texasattorneygeneral.gov
State Bar No. 24056969
P. O. Box 12548
Austin, TX 78711-2548

Attorneys for Real Party in Interest
The State of Texas

*Oral Argument Requested*

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

| Relators | Counsel |
|---|---|
| (Defendants in trial court) | |
| Xerox Corporation; | Eric J.R. Nichols |
| Xerox State Healthcare, LLC | Gretchen Sween |
| f/k/a ACS State Healthcare, LLC | Christopher R. Cowan |
| | BECK REDDEN |
| | 515 Congress Avenue, Suite 1900 |
| | Austin, TX 78701 |
| | Constance H. Pfeiffer |
| | BECK REDDEN |
| | 1221 McKinney Street, Suite 4500 |
| | Houston, TX 77010 |
| | Robert C. Walters |
| | GIBSON, DUNN & CRUTCHER |
| | 2100 McKinney Avenue, Suite 1100 |
| | Dallas, TX 75201 |
| | C. Andrew Weber |
| | KELLY HART & HALLMAN |
| | 301 Congress, Ste. 2000 |
| | Austin, TX 78701 |

| Real Party in Interest/Respondent | Counsel |
|---|---|
| (Plaintiff in trial court) | |
| The State of Texas | Office of the Attorney General |
| | Raymond C. Winter |
| | Reynolds B. Brissenden |
| | Civil Medicaid Fraud Division |
| | PO Box 12548 |
| | Austin, TX 78711-2548 |

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS ............................................................................... iii

INDEX OF AUTHORITIES ............................................................................. v

STATEMENT OF THE CASE CORRECTED ...................................................... ix

ISSUES CORRECTED ................................................................................... x

BRIEF IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS ................. 1

STATEMENT OF FACTS CORRECTED .......................................................... 4

    1.  Texas Medicaid provides a limited benefit for orthodontia. ........................... 4

    2.  Xerox, HHSC's Prior Authorization vendor, had responsibility to review, and approve or deny, each request for orthodontia services. ....................................... 6

    3.  The State brings the underlying law enforcement action against Xerox, seeking civil remedies for the unlawful acts Xerox, and only Xerox, committed. 8

    4.  The trial court denied Xerox's attempt to join third parties to the State's law enforcement action. ..................................................................................... 10

SUMMARY OF THE ARGUMENT ................................................................ 12

STANDARD OF REVIEW .......................................................................... 12

ARGUMENT ............................................................................................... 14

    I.  Because CPRC Chapter 33 does not apply in a law enforcement action brought by the State under the Texas Medicaid Fraud Prevention Act, the trial court did not abuse its discretion in granting the State's motion to strike Xerox's third party claims, or in denying Xerox's motion for leave to designate responsible third parties. .................................................................................. 14

        A.  The TMFPA is not a "cause of action based on tort" and is therefore outside the scope of Chapter 33. .................................................................. 14

        1.  Essential tort law concepts are missing from the TMFPA. .................... 15

        2.  The cases cited by Xerox are distinguishable, because the statutory causes of action were either "based on tort," or the issue was never reached by the court, and are inapplicable here because none involved statutory law enforcement actions. .................................................................................... 20

        3.  The TMFPA was modeled after federal criminal law, not on .................. 21

        traditional tort law. ..................................................................................... 21

4. The TMFPA lacks a single, indivisible injury. ..............................................22

5. When a statutory conflict would result, courts have held that Chapter 33 cannot be applied to a statute. ...................................................................24

B. The False Claims Act cases cited by Xerox do not assist the Court when interpreting the TMFPA. ........................................................................................27

C. The civil remedies the State seeks to impose against Xerox for Xerox's violations of the TMFPA are based solely on Xerox's conduct and are not the "same alleged injury" for which the State seeks redress from dental providers..29

D. Even if the TMFPA were a "statutory tort" to which Chapter 33 would otherwise apply, the Legislature did not intend for Chapter 33 to apply to the State suing in its sovereign capacity..................................................................33

E. Applying CPRC Chapter 33 to the TMFPA would violate tenets of statutory construction and lead to absurd and conflicting results. .......................37

II. Xerox has an adequate remedy at law because all of its complaints can be addressed on appeal. ...............................................................................................42

A. Only Xerox's conduct as the State's vendor is at issue in the instant matter, and Xerox has an adequate remedy on appeal. ...................................................43

1. The reasoning in *Andersen* is inapplicable in a statutory law enforcement case.. ......................................................................................................43

2. Xerox fails to cite any case law to show it lacks an adequate   remedy on appeal. ....................................................................................................46

B. Factors weigh in favor of affirming trial court's rulings. ..........................49

PRAYER ..........................................................................................................................50

CERTIFICATE OF COMPLIANCE........................................................................51

CERTIFICATE OF SERVICE .................................................................................51

# INDEX OF AUTHORITIES

**Cases**

*Acker v. Tex. Water Comm'n*, 790 S.W.2d 299 (Tex. 1990) ..................................38

*Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526  (Tex. 2002) ........................................38

*Atacosa Cnty. v. Atacosa Cnty. Appraisal Dist.*, 990 S.W.2d 255 (Tex. 1999) ......37

*Brookhouser v. State of California*, 10 Cal. App. 4th 1665, 13 Cal. Rptr. 2d 658,
 665 (1992)..........................................................................................................19

*Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290 (Tex. App.—Dallas
 2013, no pet.) ......................................................................................... 24, 25, 29, 31

*City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex. 1970)......................................41

*Compton v. Sesso*, 2006 Tex. App. LEXIS 6322, at 18-19 (Tex. App.—Austin July
 21, 2006, no pet.) ...............................................................................................45

*Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393 (Tex. 2000)
 ...........................................................................................................................38

*Cunningham v. Blue Cross Blue Shield of Tex.*, No. 2-06-363-CV, 2008 WL
 467399, at 5 (Tex. App.—Fort Worth Feb. 21, 2008, pet. denied).....................19

*Dollar Sav. Bank*, 86 U.S. (19 Wall.) at 239 ........................................................34

*Dugger v. Arredondo*, 408 S.W.3d 825 (Tex. 2013) ...............................................21

*Equitable Recovery v. Heath Ins. Brokers of Tex.,* 235 S.W.3d 376 (Tex. App.–
 Dallas 2007, pet. dism'd)....................................................................................29

*F.F.P. Operating Partners v. Duenez,* 237 S.W.3d 680 (Tex. 2007).....................21

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864 (Tex. 1999) ....36

*Goose Creek Consol. Indep. School Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d
 486 (Tex. App.—Texarkana 2002, pet. denied)..................................................30

*Grogan v. Garner*, 498 U.S. 279 (1991)..................................................................22

*Henning v. One West Bank*, 405 S.W.3d 950 (Tex. App.–Dallas 2013, no pet.)....19

*In re Altec Indus.*, No. 10-12-00207-CV, 2012 WL 2469542, at 2 (Tex. App.—
 Waco June 22, 2012, orig. proceeding) (mem. op.) ...........................................46

*In re Arthur Andersen*. 121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003,
 orig. proceeding)......................................................................................... 43, 45, 48

*In re Brokers Logistics*, 320 S.W.3d 402, 404 (Tex. App.—El Paso 2010, orig.
 proceeding) .........................................................................................................46

*In re Columbia Med. Ctr.*, 290 S.W. 3d 204 ( Tex. 2009).......................................13

*In re Greyhound Lines, Inc.*, No. 05-13-01646-CV, 2014 WL 1022329, at 1-3
 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.)......................46

*In re Inv. Capital Corp. & Serv. Corp. Int'l*, No. 14-09-00105-CV 2009 WL
 310899, at 2 (Tex. App.—Houston [14th Dist.] Feb. 4, 2009, orig. proceeding).48

*In re License Plates of Tex.*, No. 03-13-00671-CV, 2013 WL 6466919, at 1 (Tex. App.—Austin Nov. 27, 2013, no pet.) ........................................................ 42, 47

*In re Masonite Corp.*, 997 S.W.2d 194 (Tex. 1999)..................................................49

*In re Oncor Elec. Delivery Co.*, 355 S.W.3d 304 (Tex. App.–Dallas 2011, orig. proceeding) ................................................................................................46

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004).................. 13, 47, 49

*In re State Line Fireworks*, 387 S.W. 3d 27, 31-33 (Tex. App.—Texarkana 2012, orig. proceeding).......................................................................................47

*In re State*, 355 S.W.3d 611, 612 (Tex. 2011).........................................................49

*In re Taymax Fitness*, No. 04-14-00119-CV, 2014 WL 1831100, (Tex. App.—San Antonio May 7, 2014, orig. proceeding) ............................................47

*In re Team Rocket*, 256 S.W.3d 257 (Tex. 2008) ...................................................49

*In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 66 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding)...............................................................47

*In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010)...............................50

*In re Wilkerson*, No. 14-08-00376-CV, 2008 WL 2777418, at 2 (Tex. App.— Houston [14th Dist.] June 6, 2008, orig. proceeding)...........................48

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323 (Tex. 2011) ......................................................................................................20

*JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008) ......................... 21, 24, 25

*JLG Trucking v. Garza*, 2015 Tex. LEXIS 346, at 16................................................46

*Jones v. Ray*, 886 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) ................................................................................................46

*Lexington Ins. Co. v. Strayhorn,* 209 S.W.3d 83 (Tex. 2006) ...............................25

*Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex.1998).38

*Malouf v. State ex. rel. Ellis*, 461 S.W. 3d 641 (Tex. App.—Austin 2015, pet. requested).......................................................................................... 34, 38

*Moore v. Collins*, 897 S.W.2d 496 (Tex. App.—Houston [1st Dist.] 1995, no writ) ...........................................................................................................15

*Parex v. ERG Resources*, 427 S.W.3d 407 (Tex. App.—Houston [14th] 2014, pet. filed).........................................................................................................45

*Pemex Exploracion y Produccion v. BASF Corp.*, 2011 WL 9523407, at 13 (S.D. Tex. Oct. 20, 2011).......................................................................................21

*Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121 (Tex. 1988) .................. 20, 32

*R.R. Comm'n v. United States*, 290 S.W.2d 699 (Tex. Civ. App.—Austin 1956), *aff'd*, 159 Tex. 197, 317 S.W.2d 927 (Tex. 1958)....................................... 33, 34

*Republicbank Dallas, N.A. v. Interkal, Inc*., 691 S.W.2d 605 (Tex. 1985)............35

*Schlumberger Tech. v. Swanson*, 959 S.W.2d 171 (Tex. 1997) .............................20

*Simmons v. Arnim*, 220 S.W. 66 (Tex. 1920) ........................................................35

*State v. Crawford*, 771 S.W.2d 624 (Tex. App.—Dallas 1989, writ. denied)........42

*State v. Durham*, 860 S.W.2d 63 (Tex. 1993) .................................................... 32, 41
*Stewart Title Guar. Co., v. Sterling*, 822 S.W.2d 1 (Tex. 1991) .............................37
*Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104 (Tex. 2004).................24
Tex. Hum. Res. Code § 36.052(a)(1)....................................................................23
*Thomas v. State*, 226 S.W.3d 697 (Tex. App.–Corpus Christi 2007, pet. dism'd) .32
*U.S. v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014) .............................42
*United States ex. rel. Hagwood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416 (9th Cir. 1991)........................................................................................................16
*United States ex. rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196 (D.C. Cir. 1995)...............................................................................................................16
*United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) .....28
*United States v. Southland Mgmt. Corp.*, 326 F.3d 669 (5th Cir. 2003) .................42
*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) ......................33
*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351 (Tex. 2004) ..........................................................................................................................39
*Varljen v. Cleveland Gear*, 250 F.3d 426 (6th Cir. 2001).......................................16
*Villareal v. Wells Fargo Brokerage Servs.*, 315 S.W.3d 109 (Tex. App.—Houston [1st Dist. 2010], no pet.)...................................................................................21
*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) .33
*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992).................................... 12, 13, 42, 49
*Waller v. Sanchez*, 618 S.W.2d 407 (Tex. App.—Corpus Christi 1981, no writ)...41
*Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722 (Tex. App.—Fort Worth 1996, writ denied)....................................................................................................19

**Statutes**
25 Tex. Admin. Code § 33.71....................................................................................5
31 U.S.C. § 3729(a) .................................................................................................28
31 U.S.C. § 3729(a)(1)..............................................................................................16
31 U.S.C. § 3729(a)(1)(A) .......................................................................................27
31 U.S.C. § 3729(a)(1)(B) .......................................................................................27
31 U.S.C. § 3729(a)(1)(E).........................................................................................27
42 U.S.C. § 1320a-7b,..............................................................................................22
42 U.S.C. § 1396.........................................................................................................4
CPRC § 33.001 ................................................................................................. 29, 40
CPRC § 33.002(a)(1) ...............................................................................................14
CPRC § 33.002(a)(2) ...............................................................................................14
CPRC § 33.003(a).....................................................................................................39
CPRC § 33.004 ........................................................................................................39
Tex. Bus. & Com. Code § 27.01..............................................................................19
Tex. Gov't Code § 311.021(2)..................................................................................38

Tex. Gov't Code § 311.021(5) .........................................................................40
Tex. Gov't Code § 531.0055(b)(1) ....................................................................4
Tex. Gov't Code ch. 311 .................................................................................39
Tex. Hum Res. Code § 36.002 ..........................................................................8
Tex. Hum Res. Code § 36.002(2) ....................................................................18
Tex. Hum Res. Code § 36.002(9) ....................................................................27
Tex. Hum Res. Code § 36.002(10)(c) ..............................................................27
Tex. Hum Res. Code § 36.012(a)(1) ................................................................28
Tex. Hum. Res. Code § 36.052(a) ...................................................................17
Tex. Hum. Res. Code § 36.052(a)(3) ...............................................................19
Tex. Hum. Res. Code § 36.115 ........................................................................29
Tex. Hum. Res. Code § 36.115(a)(2) ...............................................................29
Tex. Hum. Res. Code §§ 36.002(1) .................................................................18
Tex. Hum. Res. Code §§ 36.052(a)(1)-(3) ........................................................10
Tex. Hum. Res. Code Ann. § 11.002(b) ...........................................................36
Tex. Hum. Res. Code Ann. § 36.052 ...............................................................16
Tex. Hum. Res. Code Ann. § 36.131 (1995) .....................................................22

**Other Sources**

2 William Blackstone, *Commentaries* .............................................................34
3 N. Singer, *Sutherland on Statutory Construction* § 62:1, 377-78 (7th ed. 2008).34
82 *C.S.J. Statutes* § 389, 483-84 (2009) .........................................................34
86 *C.J.S. Torts* § 2........................................................................................15
Gregory J. Lensing, *Proportionate Responsibility and Contribution Before and
    After the Tort Reform of 2003*, 35 Tex. Tech L. Rev. 1125, 1131 ......................15
Gus Hodges, *Contribution and Indemnity among Tortfeasors*, 26 Tex. L. Rev. 150
    ...............................................................................................................30
Gus Hodges, *Contribution and Indemnity among Tortfeasors*, 26 Tex. L. Rev. 150,
    ...............................................................................................................30
Justin Roberts & Randell Roberts, *Can Immune Parties Really be Responsible?:
    An Analysis of the Current Interpretation of the Responsible Third Party Statute
    and Its Vulnerability to Constitutional Challenge*, 43 St. Mary's L.J. 559 (2012)
    ...............................................................................................................34

## STATEMENT OF THE CASE CORRECTED

***Nature of the Case*:**  This is a mandamus action in which the Xerox parties ("Xerox") seek review of two orders issued by the trial court. The underlying suit is a law enforcement action brought on behalf of the State of Texas ("the State") by the Attorney General of Texas pursuant to the Texas Medicaid Fraud Prevention Act ("TMFPA"), a remedial public welfare statute. The State seeks to recover civil remedies against Xerox for the unlawful acts Xerox, and only Xerox, committed against the Texas Medicaid program. Xerox has attempted to join dental providers as responsible third parties to the State's suit.

***Trial Court*:**  345th Judicial District Court of Travis County, The Hon. Stephen Yelenosky, Presiding.

***Trial Court Disposition*:**  The trial court has ruled repeatedly in this, and in similar litigation, that Chapter 33 of the Civil Practice & Remedies Code does not apply to the State's actions under the TMFPA.

The trial court granted the State's motion to strike Xerox's third party claims under Rule 38 and denied Xerox's motion for leave to designate responsible third parties.[1] The trial court then denied Xerox's request to appeal the two rulings. Xerox then filed this original proceeding.

---

[1]  In addition to striking Xerox's third party claims against multiple dental providers and denying Xerox's motion for leave to designate responsible third parties, the trial court also denied two attempts by Xerox to consolidate the underlying lawsuit in the instant proceeding with other suits. Xerox, however, has failed to seek appellate relief from the trial court's two orders denying Xerox's two motions to consolidate.

## ISSUES CORRECTED[2]

1.    **Because Chapter 33 of the Civil Practice & Remedies Code does not apply in an action brought by the State under the Texas Medicaid Fraud Prevention Act, the trial court did not abuse its discretion in granting the State's motion to strike Xerox's third party claims, or in denying Xerox's motion for leave to designate responsible third parties.**

2.    **Xerox has an adequate remedy at law because all of its complaints can be addressed on appeal. Therefore, mandamus will not lie.**

## STATEMENT REGARDING ORAL ARGUMENT

The State of Texas requests oral argument.

---

[2] *See* Tex. R. App. P. 38.2(a)(1)(B).

No. 03-15-00401-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD DISTRICT
## AUSTIN, TEXAS

## IN RE XEROX CORPORATION AND XEROX STATE HEALTHCARE, LLC F/K/A ACS STATE HEALTHCARE, LLC, Relators

On Petition for Writ of Mandamus
Original Proceeding from the 53rd Judicial District Court
Travis County, Texas, Cause No. D-1-GV-14-000581
The Honorable Stephen Yelenosky, Presiding

## BRIEF IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE THIRD COURT OF APPEALS:

The State of Texas ("State"), plaintiff in the trial court proceeding below and the real party in interest in this action, respectfully submits this Response to the Petition for Writ of Mandamus ("Petition") filed by Xerox Corporation and Xerox State Healthcare, LLC f/k/a ACS State Healthcare, LLC (collectively "Xerox"). Xerox cannot meet either requirement for mandamus relief to be granted. In the first place, Chapter 33 of the Civil Practice & Remedies Code ("CPRC") does not apply in a law enforcement action brought by the State under the Texas Medicaid Fraud Prevention Act ("TMFPA"). Therefore, the trial court did not abuse its

discretion in granting the State's motion to strike Xerox's third party claims or in denying Xerox's motion for leave to designate responsible third parties into the State's law enforcement action against Xerox.

The underlying suit is a statutory law enforcement action brought by the Attorney General of Texas against Xerox under the TMFPA. *See generally* Plaintiff's Original Petition ("State's Petition"), at MR.1-23. The State's claims against Xerox are not "based on tort." Instead, the TMFPA is a remedial public welfare statute, designed by the Legislature to address the specific scourge of unlawful acts against the Texas Medicaid program. *See generally* TMFPA, Tex. Hum. Res. Code ch. 36. Although the name of the statute includes the word "Fraud," the causes of action created in the TMFPA are not a codification of the doctrine of common law fraud or any other tort-based cause of action.

The State seeks to hold Xerox – and only Xerox – liable for Xerox's false statements and material misrepresentations – both affirmatively and by omission – to the Texas Medicaid program. State's Pet., at MR.1-23. The State does not seek to hold Xerox responsible for the conduct of any other parties. *Id.* Although the State has brought law enforcement actions against a few dental providers for their conduct, the State is not seeking, as erroneously claimed by Xerox, "the same damages" against dental providers that the State seeks against Xerox. *See* Xerox's Pet. 1, 8.

2

The State alleges that during the time at issue, Xerox made misrepresentations to State officials, affirmatively and by omission, regarding its actions administering the Texas Medicaid orthodontia Prior Authorization ("PA") function. Specifically, the State contends that Xerox (1) misrepresented that Xerox staff reviewed diagnostic materials (e.g., x-rays, color photographs, cephalometric tracings) submitted by providers along with PA requests to make clinical determinations about whether the PA requests met Texas Medicaid standards for medical necessity; (2) failed to disclose that the majority of its personnel working on orthodontic PA requests had no dental education and only minimal training in their job functions; and (3) misrepresented to the State that orthodontia PA requests were being approved or denied by Xerox in accordance with Texas Medicaid policy.

Contrary to Xerox's erroneous assertion, the State does not seek "damages" from Xerox under the TMFPA. *See* Xerox Pet. at, e.g., 1, 2, 5, 7, 8. Rather, the State seeks to recover civil remedies from Xerox, including the amounts paid by Texas Medicaid "directly or indirectly" as a result of Xerox's unlawful acts, civil penalties, costs, and attorney's fees. Tex. Hum. Res. Code § 36.052.

Finally, Xerox has an adequate remedy at law because all of its complaints can be addressed by appeal. Therefore, Xerox's Petition should be denied.

## STATEMENT OF FACTS CORRECTED

Xerox's statement of facts contains argument, omits material facts, and misstates facts. The State thus submits this corrected statement of facts. Tex. R. App. P. 52.4(b).

### 1. Texas Medicaid provides a limited benefit for orthodontia.

The United States Congress enacted the Medicaid program in 1965 as a cooperative undertaking between the federal and state governments to help provide medical care to lower income individuals. Medicaid is funded jointly by the United States and each of the fifty states, as mandated by federal law. 42 U.S.C. § 1396. In Texas, the single state agency responsible for the administration of Medicaid is the Health and Human Services Commission ("HHSC"). Tex. Gov't Code § 531.0055(b)(1) ("[HHSC] shall "supervise the administration and operation of the Medicaid program.").[3]

Texas Medicaid provides coverage for dental services, including, on a very limited basis, orthodontic services. Only Medicaid-eligible children between the ages of 12 and 21 who are diagnosed with severe handicapping malocclusion or other related conditions described in the Texas Medicaid Provider Procedures

---

[3]     Currently more than 4.5 million Texans are enrolled in Medicaid. *Texas*, Monthly Medicaid and CHIP Enrollment Data, Medicaid.gov, http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-State/texas.html. In 2013, Medicaid comprised about 26.2 percent of the Texas state budget, amounting to approximately $25.6 billion dollars total for state and federal expenditures. "Pink Book," Tex. Medicaid & CHIP in Perspective (10th ed.) 1-1, http://www.hhsc.state.tx.us/medicaid/about/PB/PinkBook.pdf.

Manual ("TMPPM") qualify to receive this limited orthodontic benefit. *See* 25 Tex. Admin. Code § 33.71.

Since 2003, the Texas Medicaid orthodontia benefit policy has covered orthodontic services under three limited scenarios: (i) for children between the ages of 12 and 21 who have a severe handicapping malocclusion, which is defined by a Handicapping Labio-lingual Deviation ("HLD") score of 26 points or greater; (ii) children up to the age of 20 with cleft palate; or (iii) other medically necessary circumstances such as a head injury involving severe traumatic deviation. TMPPM (2009), Vol. 2, § 19.19, copy attached at **Appendix A.** The Texas Medicaid program does not pay for cosmetic orthodontics. *Id.*

A treating provider (dentist or orthodontist) had to submit to Texas Medicaid a prior authorization ("PA") request and receive approval before providing orthodontia services to a Medicaid patient. *See* 25 Tex. Admin. Code § 33.71. Specifically, HHSC required providers to include with each PA request the following documentation and diagnostic records: an orthodontic treatment plan; cephalometric tracings; a completed HLD score sheet; facial photographs; and a full series of radiographs or a panoramic radiograph. TMPPM at § 19.19.2, copy at **App. A.**

5

**2. Xerox, HHSC's Prior Authorization vendor, had responsibility to review, and approve or deny, each request for orthodontia services**.

The Prior Authorization ("PA") review process required HHSC's vendor to determine whether each request for orthodontia service met the criteria established by Texas Medicaid. Specifically, the PA review was "a mechanism to determine the medical necessity of selected non-emergency, Medicaid-covered, and medical services prior to service delivery" and was meant to "serve as a utilization management measure allowing payment for only those services that are medically necessary, appropriate, and cost-effective, and reducing the misuse of specified services." State's Pet. 5, at MR.5. A vendor was required to:

- Receive, correctly disposition (i.e., approve, deny, modify, or determine incomplete) prior authorization requests for services.

- Ensure that non-covered services are not prior authorized.

- Conduct quality assurance reviews to ensure appropriateness of Medicaid .PA analyst decisions.

- Ensure PA staff use well-defined processes and procedures for analysis and research for PA approvals.

- Provide sufficient and adequate professional medical staff for staffing and managing the PA function, including medically knowledgeable PA analysts for processing requests and availability of licensed medical professionals to provide consultative services regarding all Medicaid ... covered service types.

- Implement a quality assurance process and establish procedures to periodically sample and review dispositioned [sic] PA requests to determine if PA policy and procedures are being followed.

State's Pet. 5-6, at MR.5-6.

6

Xerox submitted a proposal to HHSC to become the Texas Medicaid vendor. Xerox represented to Texas Medicaid that its PA review process would do the following: (1) ensure the implementation of HHSC-approved dental criteria and policy, prevent medically unnecessary services, and identify over-utilization of services; (2) employ qualified PA staff who would review *each* request and determine both whether the orthodontic PA request complied with Medicaid policy and if the services were medically necessary; and (3) qualified clinical personnel would use their medical expertise and HHSC-approved policy to evaluate medical necessity and cost-effectiveness of requested services. Xerox also promised that it would provide ongoing quality reviews of PA activities, including reviews of accuracy of the PA determinations and adherence to documented procedures. State's Pet. 6, at MR.6.

Based on Xerox's representations, Texas Medicaid employed Xerox as the Texas Medicaid PA request review vendor, starting in January 2004. Medical necessity for the requested treatment could be verified only by examination and verification of the clinical documentation by a licensed dental professional. HHSC expected and required the PA review process implemented by Xerox to include a substantive review of the diagnostic materials providers submitted to verify the patient actually had a severe handicapping maloclussion and the conditions stated

7

by the providers on the HLD score sheet and to verify that the providers' proposed treatment plan met all program requirements.

Instead, when Xerox received PA requests from providers for orthodontia services, Xerox neither unboxed the diagnostic materials nor had qualified personnel verifying whether the condition of the children's mouths actually qualified as a severe handicapping malocclusion. Xerox merely had clerical staff review the HLD score sheet to check and see if the total score on the score sheet was 26 or greater. From 2004 to 2012, Xerox approved over 500,000 PA requests for orthodontia services. During this same time period, Xerox repeatedly represented to Texas Medicaid and gave reassurances that qualified personnel were indeed conducting substantive reviews of the PA requests.

**3. The State brings the underlying law enforcement action against Xerox, seeking civil remedies for the unlawful acts Xerox, and <u>only</u> Xerox, committed.**

The State brought the underlying statutory law enforcement action against Xerox under the TMFPA for certain unlawful acts, including misrepresentations Xerox made to HHSC. State's Pet., at MR.1- 23. The State seeks civil remedies under the TMFPA for these unlawful acts. State's Pet. 3; Tex. Hum Res. Code § 36.002.

8

The State alleges that Xerox misrepresented facts and concealed material facts, affirmatively and by omission, regarding Xerox's discharge of its obligations to HHSC. Specifically, the State alleges:

- Xerox represented to Texas Medicaid officials that its PA review system ensured proper pre-determinations of medical necessity and enforcement of Medicaid policy. Contrary to those representations, Xerox knowingly failed to adequately review the orthodontic PA requests and documentation submitted by providers to obtain prior authorization for orthodontic treatment.

- Unqualified Xerox employees routinely approved orthodontic PA requests, without proper review. Vast numbers of these orthodontic PA requests were for children who did not meet the strict Medicaid criteria to qualify for orthodontic benefits from Texas Medicaid.

- Xerox's dental director failed to properly review PA requests, and Xerox misrepresented to HHSC the director's failure to follow mandated procedures and policy.

State's Pet. 3-4. The State further alleges that Xerox's conduct violated the TMFPA.[4] Xerox's unlawful acts resulted in a breach of safeguards intended to

---

[4] A person, or entity, commits an unlawful act under the TMFPA if a person:

- Knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized.

- Knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized.

- Knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program.

9

protect taxpayer dollars, maintain the integrity of Medicaid policies, and ensure the appropriate delivery of services to Medicaid clients. Moreover, because of its misrepresentations, Xerox received tens of millions of dollars for services Xerox did not actually perform. State's Pet. 3.

The TMFPA provides statutory remedies to redress the conduct of a defendant. Tex. Hum. Res. Code § 36.052. In the underlying suit, the State seeks to recover from Xerox, and only Xerox: (l) the amount of any payments or the value of any monetary or in-kind benefits provided under the Medicaid program, directly or indirectly, as a result of Xerox's unlawful acts; (2) pre-judgment interest on the amount of the payments or the value of such payments; (3) two times the amount of the payments or the value of such payments; (4) civil penalties in an amount not less than $5,500 or more than $11,000 for each unlawful act committed by Xerox; and (5) costs, attorney's fees, and expenses. *See* State's Pet. 4; Tex. Hum. Res. Code §§ 36.052(a)(1)-(3).

### 4. The trial court denied Xerox's attempt to join third parties to the State's law enforcement action.

Xerox responded to the State's allegations, by, among other things, casting blame on dental providers who had submitted the PA requests that Xerox approved. Xerox's First Am. Original Answer and Original Third-Party Pet. 2-9, at MR.67-74. In response, the State filed its Motion to Strike. MR.77-97. The trial

Tex. Hum. Res. Code Ann. §§ 36.002(l), (2), (4)(B) (eff. Sept. 1, 2005).

10

court granted the State's motion to strike Xerox's third-party petition. *See* Order, dated Mar. 31, 2015, at MR.629-30; *see also* trial court letter, dated Feb. 10, 2015, at MR.232-34 (explaining reasoning for subsequent decision).[5]

Xerox then sought leave to designate responsible third parties, under Chapter 33. *See* Xerox's Mot. for Leave to Designate Responsible Third Parties, at MR.235-606. The State filed an Objection to Xerox's motion. MR.607-28. The trial court denied Xerox's motion. *See* Order Denying the Xerox Parties' Mot. for Leave to Designate Responsible Third Parties, dated Apr. 15, 2015, at MR.631. *See also* court's letter, dated Sept. 26, 2014 ("The State is . . . entitled to pursue a Medicaid Fraud claim against a defendant to the exclusion of all other parties . . ."). MR.210-11. After the trial court denied Xerox's request to take an interlocutory appeal, Xerox initiated this mandamus proceeding.[6]

---

[5]  The court, in explaining its decision to strike Xerox's third-party petition, wrote:

> There is no authority for treating an enforcement action by the State as a statutory tort, and the civil remedy in the TMFPA is not a damage provision. Each wrongful actor is liable for a civil remedy and penalty in multiples of the State's actual loss that is undiminished by the civil remedy and penalty assessed on or paid by another actor. What Xerox characterizes as a "novel theory" is the plain meaning of the statute. There is no comparative fault, joint-and-several liability, contribution, single-satisfaction, or settlement credit in a TMFPA action. If there is any right to contribution, it must be pursued in a separate action between alleged wrongdoers.

Decision Letter, p. 1, at MR.232.

[6]  Xerox erroneously asserts that a separate law enforcement action brought by the State against several dental providers is "inextricably intertwined" with the instant suit; however, the State's allegations against the dental providers are factually and legally distinct from the State's allegations against Xerox in the instant underlying suit. *See* Xerox's Pet. 8; *State v. Nazari*, Cause No. D-1-GN-14-005380 (53rd Dist. Ct., Travis County, Tex.). In the State's law

11

## SUMMARY OF THE ARGUMENT

The Court should deny Xerox's petition for writ of mandamus because the trial court correctly ruled that the State's law enforcement action, brought under the TMFPA, is not based on tort, the State does not seek "damages" capable of apportionment, and, thus, CPRC Chapter 33 does not apply in the underlying case. The trial court, therefore, did not abuse its discretion in striking Xerox's third party claims or in denying Xerox's motion for leave to designate responsible third parties. Also, Xerox has an adequate remedy at law on appeal.

## STANDARD OF REVIEW

"Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal." *Walker v. Packer*, 827 S.W.2d 833, 839-40, n.7 (Tex. 1992). A clear abuse of discretion is only found when the dispute had but one reasonable answer and the

---

enforcement actions against several dental providers, the liability rests only upon each dental provider's acts and omissions, and whether the dental providers submitted false statements to Texas Medicaid. In contrast, the only conduct at issue in this matter, and that will be considered by the trier of fact, is Xerox's, and *only* Xerox's acts and omissions.

In the *Nazari* matter, the dental provider defendants sought to name Xerox as a responsible third party. The trial court denied the dental providers' attempt to join Xerox as a third party. The dental providers now seek interlocutory appellate relief from this Court. *See* No. 03-15-00252-CV, *Nazari v. State of Texas*. In its Appellee's Brief in 03-15-00252-CV, Xerox argues that this Court should decide the merits of the *Nazari* appeal alongside the merits of this original proceeding. On that point, the State and Xerox agree. The Court should deny Nazari's interlocutory appeal at the same time it declines to issue this mandamus. *See* State's appellee's brief in No. 03-15-00252-CV (discussing reasons Nazari's interlocutory appeal should be denied).

12

court chose another. *See id* at 839-40 ("A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.") (internal quotation omitted).

Mandamus should only be granted if the relator has no other adequate remedy at law. *In re Columbia Med. Ctr.*, 290 S.W. 3d 204, 207 (Tex. 2009) ("Generally, mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law, . . . when an adequate remedy by appeal does not exist. . . . . Mandamus should not issue to correct grievances that may be addressed by other remedies.") (citations omitted); *see also Walker v. Packer*, 827 S.W.2d at 841 ("The requirement that mandamus issue only where there is no adequate remedy by appeal is sound, and we reaffirm it today.").

Courts look to the particular circumstances to determine that an adequate appellate remedy is available. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 137 (Tex. 2004) ("Whether an appellate remedy is 'adequate' so as to preclude mandamus relief depends heavily on the circumstances presented and is better guided by general principles than by simple rules."). And such "considerations implicate both public and private interests." *Id.* at 136.

## ARGUMENT

**I. Because CPRC Chapter 33 does not apply in a law enforcement action brought by the State under the Texas Medicaid Fraud Prevention Act, the trial court did not abuse its discretion in granting the State's motion to strike Xerox's third party claims, or in denying Xerox's motion for leave to designate responsible third parties.**

### A. The TMFPA is not a "cause of action based on tort" and is therefore outside the scope of Chapter 33.

CPRC Chapter 33 applies only (1) to an action "based on tort," in which a trier of fact can apportion, among a defendant and others, responsibility for a harm, or (2) to an action brought under the DTPA in which "a defendant, settling person, or responsible third party is found responsible for a percentage of the harm." CPRC §§ 33.002(a)(1), (2).[7]

Xerox argues that because the TMFPA has the word "fraud" in its title, and because fraud is a tort, the TMFPA is a statutory tort. *See* Xerox's Pet. 13. In support of this argument, Xerox points to cases that have applied Chapter 33 to statutory causes of action, and to some federal False Claims Act ("FCA") cases in which the FCA is described as a tort or sounding in tort. *Id.* at 14. For the following reasons, and as the trial court correctly determined, the TMFPA is not a statutory tort. First, the TMFPA lacks the requisite elements of tort law, such as

---

[7]     The fact that the Legislature specifically included the DTPA within the scope of Chapter 33's reach illustrates that it did not intend to include the TMFPA or other public welfare statutes. If the Legislature had wanted Chapter 33 to apply to the TMFPA, it would have said so – clearly and unambiguously.

14

reliance, causation, and damages. Second, the TMFPA is not a codification of the common law tort of fraud, and there is no "single indivisible injury" to apportion among joint tortfeasors, as contemplated by Chapter 33.[8] And third, the TMFPA is fundamentally different from the False Claims Act, and comparisons to the False Claims Act are not instructive in this instance.

### 1. Essential tort law concepts are missing from the TMFPA.

"The basic elements necessary to state any tort claim are duty; breach of duty; causation between the breach of the duty and the injury; and actual damage." 86 *C.J.S. Torts* § 2. A civil wrong or breach of duty imposed by law "is called a tort only if the harm that has resulted is capable of being compensated in an action at law for damages." *Moore v. Collins*, 897 S.W.2d 496, 501 (Tex. App.—Houston [1st Dist.] 1995, no writ) (noting that a tort is a breach of some duty, other than a contractual or quasi-contractual duty, which gives rise to an action for damages). To establish liability under the TMFPA, the State has no obligation to show an independent duty on the part of Xerox. However, even assuming that the TMFPA imposes a legal duty and Xerox has breached that duty, other essential elements of

---

[8]     *See* Gregory J. Lensing, *Proportionate Responsibility and Contribution Before and After the Tort Reform of 2003*, 35 Tex. Tech L. Rev. 1125, 1131 ("In sum, the proportionate-responsibility principles set forth in Chapter 33 will govern virtually any Texas tort case (possibly excluding statutory causes of action) *in which more than one party (including the plaintiff) is alleged to have caused or contributed to cause a single, indivisible injury through the violation of any legal duty 'based on tort.'*") (emphasis added).

a tort-based cause of action – e.g., causation, injury, and damages – are not present in the TMFPA and are not required for the State to prevail on its TMFPA claims.

For a defendant to be liable under the TMFPA, the State must prove that the defendant committed an unlawful act as described in section 36.002. Tex. Hum. Res. Code § 36.002. Section 36.002 defines proscribed conduct for which the State may recover civil remedies, without regard to whether or not the proscribed conduct caused the State any harm. Put another way, the defendant's liability to the State is established once a violation of the TMFPA is established and the State need not show actual monetary loss in order to recover civil remedies.[9] Tex. Hum. Res. Code § 36.052.

Additionally, for a defendant to be held liable for civil remedies, the TMFPA does not require the defendant to have actually received a benefit or a payment from the State. A benefit or payment may have gone to a third party, and the defendant may still be liable to the State for that benefit or payment. Tex. Hum. Res. Code Ann. § 36.052(a)(1) (authorizing the State to recover "the amount of

---

[9]     *See* § 36.052: "CIVIL REMEDIES. (a) …[A] person who commits an unlawful act *is liable* to the state . . ." Tex. Hum. Res. Code Ann. § 36.052 (2011) (emphasis added). *See also* 31 U.S.C. § 3729(a)(1) (a person who presents a false claim "*is liable* to the United States Government . . ."); *Varljen v. Cleveland Gear*, 250 F.3d 426, 429-30 (6th Cir. 2001) ("Recovery under the FCA is not dependent upon the government's sustaining monetary damages."); *United States ex. rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) ("regardless whether the submission of the claim actually causes the government any damages . . . its very submission is a basis for liability"); *United States ex. rel. Hagwood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (holding that government "need not show damages in order to recover civil penalties under FCA).

any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act, *including any payment made to a third party*") (emphasis added). The State is also entitled to recover a civil penalty for each unlawful act. Tex. Hum. Res. Code § 36.0052(a)(3). *See generally* Tex. Hum. Res. Code § 36.052(a) (containing scope of civil remedies to which the State is entitled under TMFPA).

Importantly, the TMFPA provides for recovery of the amount *paid* by Texas Medicaid, not the amount paid in error or in overpayment, and not the amount paid less any benefit that may have been received by the Medicaid program. Tex. Hum. Res. Code § 36.052(a)(1). The amount the State may recover as civil remedies is therefore measured by the amount the state paid, without reference to whether the State sustained any actual loss or "damage" from the unlawful conduct. The TMFPA unambiguously includes *all* of the payment made by the State, even if, but for the unlawful conduct, the State would have made the same payment at a different time, or made some payment in a lesser amount. Under the TMFPA, therefore, any remedies owed to the State are a measure of the *magnitude* of the defendant's unlawful conduct, and not a measure of any tort-based concept of damages. *See* Tex. Hum. Res. Code § 36.052(a)(1).

Likewise, in a TMFPA action the State does not have to show causation – a necessary element in tort-based causes of action. As previously described, a

17

defendant "is liable" to the State for civil remedies once the State has proved the unlawful act. *See* Tex. Hum. Res. Code § 36.052(a). Yet Xerox argues that the "as a result of" language in the civil remedies portion of the statute, section 36.052(a)(1), is the equivalent of a tort-based causation standard and is a prerequisite to the State establishing liability. It is not.

First, in the liability section of the TMFPA, there is no causation requirement. A person is liable if he knowingly makes a false statement, regardless of whether that misrepresentation actually caused injury or harm to the State. *See, e.g.*, Tex. Hum. Res. Code §§ 36.002(1) (affirmative false statements), 36.002(4) (false statements regarding information required by law).[10]

Second, by using, in the remedies section, the phrases "directly or indirectly" and "as a result of" the unlawful act, the Legislature defined the scope of the benefits or payments the State may recover from an *already-liable* defendant. Should the State fail to show the payment or benefit was made "as a result of" the unlawful act, the State may not recover those amounts, but the defendant is nonetheless liable for the unlawful act, and for a civil penalty for the

---

[10] The words "to permit" found in 36.002(2) do not require the State to show that a defendant's unlawful conduct caused harm; rather, "to permit" refers to the fact that the defendant's unlawful conduct may "open the door" to allow a person to obtain a benefit. *See* Tex. Hum. Res. Code § 36.002(2). The State has no obligation to demonstrate, for liability purposes, that anyone actually received an unauthorized benefit. *See id.*

unlawful act. *See* Tex. Hum. Res. Code § 36.052(a)(3) (prescribing minimum penalty of $5,500 per unlawful act).[11]

In contrast, with a tort cause of action there can be no liability without causation of damages. *See Cunningham v. Blue Cross Blue Shield of Tex.*, No. 2-06-363-CV, 2008 WL 467399, at *5 (Tex. App.—Fort Worth Feb. 21, 2008, pet. denied) (citing *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 728 (Tex. App.—Fort Worth 1996, writ denied) ("In any cause of action, whether grounded in tort, contract, or a hybrid of the two, causation is the essential element necessary to attribute fault for one's injuries to another.")); *Brookhouser v. State of California*, 10 Cal. App. 4th 1665, 1677, 13 Cal. Rptr. 2d 658, 665 (1992) ("It is axiomatic that a defendant cannot be held liable in tort for an injury he or she did not cause.").

The TMFPA also lacks any element of reliance. Fraud causes of action, even some statutory frauds, include an element of reliance. Indeed, the elements of statutory fraud are essentially the same as those of common-law fraud, except that the plaintiff need not prove the defendant's knowledge or recklessness. *See Henning v. One West Bank*, 405 S.W.3d 950, 963 (Tex. App.–Dallas 2013, no pet.) (comparing elements of statutory fraud under Tex. Bus. & Com. Code § 27.01 to

_____

[11] The civil penalty provision contains no "as a result" language. A person who commits an unlawful act is subject to a mandatory civil penalty regardless whether there was any payment by the Medicaid program as a result of the unlawful act. Tex. Hum. Res. Code § 36.052(a)(3).

elements of common law fraud). In a fraud case, including a statutory fraud case, the defendant can show the plaintiff's knowledge of the fraudulent conduct to negate the element of reliance.[12] But the State's knowledge is not relevant in this case because reliance is not an element of a TMFPA claim.[13] The absence of a reliance element in the TMFPA is further indication that it is not a "statutory fraud" to which Chapter 33 applies.

## 2. The cases cited by Xerox are distinguishable, because the statutory causes of action were either "based on tort," or the issue was never reached by the court, and are inapplicable here because none involved statutory law enforcement actions.

As a preliminary matter, none of the cases that Xerox cites in support of applying Chapter 33 to the TMFPA involve statutory law enforcement actions brought by the State in its sovereign capacity to enforce a public welfare statute. Nor could the State identify such a case.[14] This is not surprising because, as will be discussed below, the State in a TMFPA enforcement action is not a "person" to whom Chapter 33 applies. In the cases Xerox cites, the courts either took pains to analyze the particular statute at issue and determine, on a statute-by-statute basis,

---

[12] *Schlumberger Tech. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *see also Italian Cowboy Partners v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336-37 (Tex. 2011).

[13] *See Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988) (orig. proceeding) (holding that a court may not write special exceptions into a statute to make the statute inapplicable under certain circumstance not mentioned in the statute).

[14] The undersigned counsel conducted a diligent search and could find no Texas case where a court applied Chapter 33 to a statutory law enforcement action brought by the State in its sovereign capacity.

whether the statutory cause of action was "based on tort" within the meaning of Chapter 33, or failed to reach the issue at all.[15]

Regarding the statutes to which the Texas Supreme Court has applied Chapter 33, each requires a plaintiff to prove the necessary elements of a tort cause of action: duty, breach, causation, and damages. Consequently, none of the cases cited by Xerox are binding on this Court, and none of the findings translate to the TMFPA or are persuasive given the particular statutory scheme adopted by the Legislature in the TMFPA.

### 3. The TMFPA was modeled after federal criminal law, not on traditional tort law.

The enumerated unlawful acts in the TMFPA have their roots in criminal law, and are not a codification of any common law or traditional tort-based causes

---

[15] *See Dugger v. Arredondo*, 408 S.W.3d 825 (Tex. 2013) (holding that Wrongful Death Act is based on tort); *F.F.P. Operating Partners v. Duenez*, 237 S.W.3d 680 (Tex. 2007) (recognizing previous holding that Dram Shop Act incorporates essential elements of negligence action and holding that it thus sounds in tort); *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008) (holding that UCC Article 2 breach of implied warranty claim is tort based, as claim for implied warranty a traditional basis for product liability claim); *Villareal v. Wells Fargo Brokerage Servs.*, 315 S.W.3d 109 (Tex. App.—Houston [1st Dist. 2010], no pet.) (applying CPRC § 33.004(e) to Texas Securities Act and Texas Trust Act claims because real parties in interest failed to argue that acts were not based on tort); *Pemex Exploracion y Produccion v. BASF Corp.*, H-10-1997, H-11-2019, 2011 WL 9523407, at *13 (S.D. Tex. Oct. 20, 2011) (applying CPRC Chapter 33 to Theft Liability Act ("TLA") to permit designation of responsible third parties under section 33.004(j)).

Regarding the TLA, the Texas Supreme Court has not yet been asked to determine whether Chapter 33 might apply to the TLA, or portions thereof. The TLA allows a civil remedy for certain theft offenses, several of which have a corresponding common law tort-based cause of action, such as conversion, quantum merit, and trespass to personal property. CPRC §§ 134.001-.005. The *Pemex* court did not identify the penal code violation(s) made the basis of the TLA claims in the suit *Pemex*, 2011 WL 9523407, at *11.

of action. The majority of the unlawful acts in section 36.002 of the TMFPA, including all of the provisions at issue in this case, do not derive from or codify existing tort law, but rather were created from 42 U.S.C. § 1320a-7b, entitled "Criminal penalties for acts involving Federal health care programs." Moreover, prior to the repeal of section 36.131 of the Human Resources Code in 2005, prior versions of the TMFPA specified that committing an unlawful act under section 36.002 constituted a criminal offense.[16] The fact that the TMFPA now provides only civil remedies and penalties for violations of the Act does not change the underlying statutory, non-tort based nature of the causes of action.[17]

### 4. The TMFPA lacks a single, indivisible injury.

Unlike the tort-based statutes to which Chapter 33 has been previously applied, under the TMFPA there is no single, indivisible injury to apportion among joint tortfeasors. First, as noted earlier, the State need not show actual injury in order to hold Xerox liable for its unlawful acts. Second, Xerox can only be held liable for payments made directly or indirectly as a result of *its* unlawful acts. *See*

---

[16]   *See* § 36.131 Tex. Hum. Res. Code Ann. (1995) (providing that a violation of section 36.002 constituted at least a Class C misdemeanor and up to a first degree felony depending on the total amount of payments made as a result of the unlawful act).

[17]   Xerox argues that "claims to recover damages for overpayments based on false statements for Medicaid reimbursement [under the FCA] are '"substantive causes of action for fraud'" and cites to *Grogan v. Garner*, 498 U.S. 279, 288 (1991) for this proposition. The *Grogan* court, however, even though citing the FCA as one of several federal "fraud" statutes, did not undertake to analyze whether the FCA is "based in tort." *See* Xerox Pet. at p. 16. The State discusses the differences between the TMFPA and the FCA, in section I.B., below.

Tex. Hum. Res. Code § 36.052(a)(1). Therefore, Xerox can never be held liable under the TMFPA for the actions of third parties and cannot be held liable for payments made, directly or indirectly, as the result of someone else's conduct. *See id.*

Additionally, the Legislature intended to allow the State to recover from a defendant payments the State made to third parties. *See* Tex. Hum. Res. Code § 36.052(a)(1) ("a person who commits an unlawful act is liable to the state for the amount of any payment or the value of any monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act, including any payment made to a third party"). The State may recover the full amount of the "payment" under section 36.052, without regard to whom the payment was made and without reference to any alleged "harm" or "injury" to the State. That the State may recover these dollars as a statutory remedy does not mean Xerox is paying some other violator's "proportionate share," or discharging the liability of third parties such that a contribution claim would be available.[18]

---

[18] Xerox also contends that TRCP Rule 38 permits Xerox to join potentially responsible contribution defendants. *See* Xerox's Pet. 26. While Rule 38 provides the procedural mechanism for joining contribution defendants, it does not create a cause of action for contribution. Rule 38 neither creates a cause of action nor confers an independent right of contribution. *See* Tex. Gov't Code § 22.004(a) ("The supreme court has the full rulemaking power in the practice and procedure in civil actions, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant."). Contribution is a statutory creation. Consequently, absent an independent, substantive right to contribution, Rule 38 alone has no legal effect.

Permitting "contribution defendants," such as dental providers, to be joined or named as responsible third parties under Chapter 33 would undermine this language in the TMFPA, which expressly permits the State to recover, from Xerox, any "payments made to third parties" as a result of Xerox's unlawful acts. Tex. Hum. Res. Code § 36.052(a)(1). Such a result is contrary to the unambiguous language of the statute, would dramatically alter the legislative liability scheme inherent in the TMFPA, and would have sweeping implications for every TMFPA case.

### 5. When a statutory conflict would result, courts have held that Chapter 33 cannot be applied to a statute.

The Dallas Court of Appeals' analysis in declining to apply Chapter 33 to the Uniform Fraudulent Transfers Act ("UFTA") is instructive. *See Challenger Gaming Solutions, Inc. v. Earp*, 402 S.W.3d 290, 296 (Tex. App.—Dallas 2013, no pet.) (holding that Chapter 33 "has no applicability in an UFTA claim").[19] The same result should occur here.

In *Challenger*, a lender sued a borrower's ex-wife under the UFTA. *Id.* at 291. The ex-wife moved to designate the borrower as a responsible third party under Chapter 33, and the trial court allowed the designation. *Id.* The jury found the borrower 50% responsible for Challenger's damages, and reduced the award to

---

[19] The court also provided a cogent analysis of two cases cited by Xerox. *See JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701 (Tex. 2008); *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104 (Tex. 2004).

Challenger against the ex-wife. *Id.* On appeal, Challenger argued that Chapter 33 did not apply to the UFTA. *Id.* at 296-99.

In determining that Chapter 33 does not apply to the UFTA, the court noted that the UFTA "delineates what types of transfers and obligations are fraudulent, enumerates the remedies available to a creditor, prescribes the measure of liability to a transferee, and lists the defenses and protections afforded to a transferee." *Id*. at 294.[20] The court noted that "the proportionate responsibility statute [Chapter 33] conflicts with the liability scheme in the UFTA and cannot be reconciled." *Id.* at 299. When two statutes conflict and cannot be reconciled, the specific statute controls over the more general. *Challenger*, 402 S.W.3d at 295 (citing to Tex. Gov't. Code Ann. § 311.026(b), *Lexington Ins. Co. v. Strayhorn,* 209 S.W.3d 83, 86 (Tex. 2006)).

As in *Challenger*, allowing the application of Chapter 33 to TMFPA cases would turn the Legislature's intended effectiveness of the TMFPA on its head. For

---

[20]  Interestingly, in reaching its decision the court did not find *JCW Electronics* dispositive:

> In contrast…an UFTA claim does not lend itself to a fault-allocation scheme. Rather the focus of an UFTA claim is to ensure the satisfaction of a creditor's claim when the elements of a fraudulent transfer are proven. Specifically, the UFTA provides several different forms of equitable relief designed to follow and reach assets…. Also, the UFTA provides for a money judgment that does not exceed the value of the asset transferred or the amount necessary to satisfy the creditor's claim….Further the UFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made, but does not distinguish the forms of relief based on culpability….That is, "[i]t operates against the title of an 'innocent' transferee who has not paid value just as fully as against the title of a transferee who has participated in a fraud.

*Id*. at 298-99 (citing *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701).

instance, in a TMFPA case involving off-label promotion of pharmaceutical rugs by a pharmaceutical company, the potential "contribution defendants" could number in the thousands, with pharmaceutical companies seeking to join every Texas Medicaid provider who prescribed the drug and each pharmacy as "causing or contributing to cause the harm for which damages is sought." When the Legislature limited participation in TMFPA actions to the Attorney General (subchapter B) and *qui tam* relators (subchapter C), the Legislature foreclosed the participation in an action of any other "private persons," including third-party contribution defendants.

In sum, the concept of "joint tortfeasors" combining to violate the TMFPA and causing the State one indivisible injury is not supported by the TMFPA's plain language. Xerox seeks to have the fact-finder consider the "proportionate responsibility" of dental providers for false statements contained in their PA requests for orthodontia services. Those false statements, so goes Xerox's theory, caused or contributed to cause injury to the State. But Xerox's defense necessarily fails because Xerox is liable under the TMFPA for its own independent unlawful conduct – whether that conduct caused injury to the State or not and whether an assertion made by a dental provider in its PA request was accurate or not. In this way, the goal of the TMFPA is not merely to make the State whole but also to deter future unlawful acts.

**B.** **The False Claims Act cases cited by Xerox do not assist the Court when interpreting the TMFPA.**

The False Claims Act ("FCA") cases as cited by Xerox are neither instructive nor persuasive when analyzing the TMFPA.[21] The TMFPA is far more specific than the FCA in its enumeration of unlawful acts, and broader in terms of the proscribed conduct that it reaches. Moreover, apart from the use of the word "Fraud" in the title, the word appears only twice in the body of the TMFPA.[22] In contrast, the FCA requires presentment of a false *or fraudulent* claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). The TMFPA does not have this requirement, nor makes any reference to a "fraudulent" claim. The FCA also references an actor's intent "to *defraud*" the government, and provides that "no proof of specific intent to *defraud* is required." *Id*. at §§ 3729(a)(1)(E), (b)(1)(B). With respect to the latter provision, the Legislature considered this exact language, but ultimately did not include it in the 2005 amendments to the TMFPA.[23] Of particular significance to Chapter 33's

---

[21]     The FCA and the TMFPA differ in many important ways, but briefing constraints preclude an exhaustive analysis of the differences.

[22]     *See* Tex. Hum Res. Code § 36.002(9) (making it an unlawful act to enter into a "conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or fiscal agent"); Tex. Hum Res. Code § 36.002(10)(c) (making it an unlawful act to "engage in a fraudulent activity in connection with the enrollment of an individual eligible under the Medicaid program in the organization's managed care plan or in connection with marketing the organization's services to an individual eligible under the Medicaid program").

[23]     The introduced version of SB 563, which would become the 2005 amendments to the TMFPA, originally defined the culpable mental state now contained in section 36.0011 as "the person's specific intent to defraud. . . ." This language was amended to read "the person's

inapplicability to the TMFPA, the government's recovery under the FCA is couched in terms of "damage" to the government.[24] Hence, it is the harm to the government in a FCA case, not the amount the government paid, that is considered. The TMFPA makes no such reference to "damage" in connection with the State's recovery.[25]

But Xerox argues that because section 36.1021 references damages, and because the State has made reference to "damages" at various times in the record, that the State seeks damages in a TMFPA action. *See* Xerox's Pet. 22. That the State is not seeking "damages" in a TMFPA action is covered below, but for purposes of distinguishing the TMFPA from the FCA, it is important to note that section 36.1021 is referencing both the State's recovery of civil remedies and penalties, and a *qui tam relator's* recovery of *damages*.

Section 36.1021 reads: "STANDARD OF PROOF. In an action under this subchapter, the state or person bringing the action must establish each element of the action, including damages, by a preponderance of the evidence." As discussed below, there is no requirement that the State prove damage or harm to prevail in a

---

specific intent to commit an unlawful act" prior to the passage of the bill. *Compare* Tex. S.B. 563, 79th Leg., R.S. (2005) (introduced version), *with* Tex. Hum Res. Code § 36.0011.

[24]     31 U.S.C. § 3729(a) (permitting the government to recover a civil penalty "plus 3 times the amount of *damages which the Government sustains* because of the act of that person.") (emphasis added). This provision has been interpreted to allow for evidence of the government's net economic harm to be presented. *See United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010).

[25]     *Compare* Tex. Hum Res. Code § 36.012(a)(1), *with* 31 U.S.C. § 3729(a).

28

TMFPA case, and "damages" is not an element of the State's claim. The TMFPA contains a retaliation provision: A private person relator may choose to assert a claim for damages as a result of any retaliation or discrimination for bringing the unlawful conduct to the State's attention. *See* Tex. Hum. Res. Code § 36.115. It is in this context that the word "damages" appears again. In addition to reinstatement, a person who is retaliated against for bringing a TMFPA action is entitled to "two times the amount of back pay, interest on the back pay, and compensation for any special *damages* sustained as a result of the discrimination . . ." *See* Tex. Hum. Res. Code § 36.115(a)(2). The damages reference, made in this context, is limited to the potential damages awarded to a *qui tam* relator for wrongful termination, and does not operate to transform the plain language of section 36.052 into a "damages" provision.

**C.     The civil remedies the State seeks to impose against Xerox for Xerox's violations of the TMFPA are based solely on Xerox's conduct and are not the "same alleged injury" for which the State seeks redress from dental providers.**

Because Chapter 33's sole purpose is to apportion "proportionate responsibility," the statute "requires the trier of fact to determine the percentage of responsibility of each claimant." CPRC § 33.001; *Challenger Gaming*, 402 S.W.3d at 292. *See also Equitable Recovery v. Heath Ins. Brokers of Tex.,* 235 S.W.3d 376, 387 (Tex. App.–Dallas 2007, pet. dism'd) ("Contribution and indemnity are methods by which the burden of paying damages to a plaintiff is *shifted from one*

*defendant to another*, both of whom are *jointly liable* to the plaintiff on the same claim.") (emphasis added); *Goose Creek Consol. Indep. School Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 492 (Tex. App.—Texarkana 2002, pet. denied) (third-party actions under Tex. R. Civ. P. 38(a) "join a party who may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claims against the defendant").[26]

Here, there is no "joint liability" between Xerox and any dental providers, somehow resulting in one indivisible injury to Texas, such that Xerox can "shift" its TMFPA liability onto these putative third parties. Xerox's violations of the TMFPA stand alone and do not depend on whether dental providers also violated the TMFPA.[27] For example, Xerox's misrepresentations to HHSC regarding Xerox's prior authorization (PA) review process violated the TMFPA without regard or reference to the veracity of dental providers' submissions to Xerox. Additionally, Xerox's failure to provide trained personnel to review PA requests has no factual nexus with any conduct attributable to dental providers. Xerox's

---

[26]    *See also* Gus Hodges, *Contribution and Indemnity among Tortfeasors*, 26 Tex. L. Rev. 150, 150 ("Historically neither the common law courts nor the legislative bodies have been sympathetic with the plight of wrongdoers in the adjustment of their affairs."). Not until 1917 did Texas adopt a statute which expressly provided for contribution. *Id.* at 151.

[27]    Here Xerox attempts to join as third parties twenty-seven dental providers. *See* Xerox's First Am. Original Answer and Original Third-Party Pet., at MR.68-71. But these are not the only dentists who treated Medicaid patients, and they are not the only dentists who the State alleges have committed unlawful acts. It appears that Xerox's attempt to implead these dentists is retaliatory, after these dentists first cast blame on Xerox.

focus on the potential measure of the remedy mandated by section 36.052(a)(1), rather than on the nature of its own, independent liability under the TMFPA, is misdirected. The fact that one potential measure of the civil remedies prescribed by the TMFPA for Xerox's unlawful conduct is the dollars paid to providers is not germane to the question of whether joint liability exists. Because there is no joint liability between Xerox and the third party providers, Xerox can never be responsible for more than its own injury-causing conduct. *See Challenger Gaming*, 402 S.W.3d at 292.

While Xerox may deem it a harsh reality, the TMFPA does not provide for common law or equitable defenses. As the State has explained:

> Allowing the Xerox Parties and Providers to Consolidate Texas's TMFPA case with other cases involving common law claims, where all claims would be tried to the same jury and damages awarded accordingly, would indeed allow the Xerox Parties and providers to assert equitable and common law defenses and introduce such concepts as comparative fault and responsible third-party liability and contribution into the same jury trial, addressing Texas's TMFPA claims. Consolidating these cases into a single case would circumvent this Court's and other Travis County Court's consistent holdings that equitable and common law defenses and concepts do not apply to the TMFPA and allowing such would cause jury confusion and be substantially prejudicial to Texas.

*See* State of Texas's Opp'n to Xerox Parties' Mot. to Consolidate, at p. 8, copy attached at **Appendix B**.

Furthermore, the right to contribution has its origins in equity. Texas courts have consistently held that the State of Texas in its sovereign capacity is not

31

subject to equitable defenses, including laches, estoppel, quasi-estoppel, and ratification. *See State v. Durham*, 860 S.W.2d 63, 67-68 (Tex. 1993). The rationale behind this policy is to allow governmental entities to pursue claims and enforce statutes intended to protect the public interest. *Thomas v. State*, 226 S.W.3d 697, 710 (Tex. App.–Corpus Christi 2007, pet. dism'd). Like other Texas law enforcement statutes, the TMFPA is a statute that sets forth all violations and available defenses. A violation of a statute is limited to the terms of the statute itself. Likewise, the only defenses available are those specifically set forth in the statute; common law defenses are simply not applicable. *See, e.g.*, *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988) ("when the Legislature has spoken on a subject, its determination is binding upon the courts unless the Legislature has exceeded its constitutional authority"). And, Travis County courts, when interpreting the TMFPA, have held that equitable and common law defenses and concepts are not available.[28]

---

[28]    *See* Exs. A - E to the State's Opp'n to Xerox Parties' Mot. to Consolidate, at **App. B**. (Ex. A, Order from The Honorable Judge Yelenosky granting Pls.' Traditional and No-Evidence Mot. for Partial Summ. J. on Defs.' Waiver Defense; Ex. B, Order from The Honorable Judge Yelenosky granting Pls.' Traditional Mot. for Partial Summ. J. on Defs.' Equitable Defenses; Ex. C, Order from Judge John K. Dietz on Cross-Motions for Summ. J. (granting, *inter alia*, Plaintiffs' Motion for Partial Summary Judgment on Defendants' Defenses to the [TMFPA] at 3-4 ("The Court finds that equitable defenses and defenses or limitations found in the [CPRC] do not apply to the Plaintiffs' claims under TMFPA"); Ex. D, Order from Judge Lora Livingston on Motions for Summ. J. (granting, *inter alia*, Plaintiffs' Traditional Motion for Partial Summary Judgment on Certain Defenses (ratification, failure to mitigate, good faith, industry practice, proximate cause and intervening/superseding acts) and Plaintiffs' No-Evidence Motion for Partial Summary Judgment as to All Defendants (waiver and selective enforcement)) at 2-3; and Ex. E, Order from Judge Suzanne Covington granting Pl.'s First Am. Mot. for Partial Summ. J.).

**D. Even if the TMFPA were a "statutory tort" to which Chapter 33 would otherwise apply, the Legislature did not intend for Chapter 33 to apply to the State suing in its sovereign capacity.**

Under the common law, there is a "longstanding interpretive presumption that 'person' does not include the sovereign," which "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780–81 (2000) (applying Supreme Court's "longstanding interpretive presumption that 'person' does not include the sovereign" to term "person" in federal False Claims Act and noting that presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary"); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947) ("In common usage ['person'] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so."); *see also R.R. Comm'n v. United States*, 290 S.W.2d 699, 702 (Tex. Civ. App.— Austin 1956), *aff'd*, 159 Tex. 197, 317 S.W.2d 927 (Tex. 1958) (stating common-law rule that the sovereign "shall not be bound unless the statute is made by express words to extend to [the sovereign]" and noting that "ordinary legislation is intended merely to regulate the acts and rights of individuals" (citation and internal quotation marks omitted)).[29]

---

[29] "Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the

Indeed, this Court recently ruled that CPRC Chapter 74, the Texas Medical Liability Act, ("TMLA") does not apply to the TMFPA because the State is not a "person" as included in the definition of "claimant" in the TMLA. *See Malouf v. State ex. rel. Ellis*, 461 S.W. 3d 641 (Tex. App.—Austin 2015, pet. requested). The Court also considered the conflicts that would result from a forced application of the TMLA onto the TMFPA. *Id*. n.3 This Court should similarly hold that the State is not a claimant for the purposes of analyzing CPRC 33.[30]

To allow a TMFPA defendant to apply Chapter 33 would be to interfere with the State's right to manage its fiscal affairs. The sovereign is generally not a "person" under statutes that would restrict the sovereign's rights and interests:

> It is a familiar principle that the King is not bound by any act of the Parliament unless he be named therein *by special and particular words*. The most general words that can be devised (for example, *any person or persons*, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests.

*Dollar Sav. Bank*, 86 U.S. (19 Wall.) at 239 (emphasis added); *accord* 2 William Blackstone, *Commentaries* *253; *see also, e.g.*, *R.R. Comm'n*, 290 S.W.2d at 702.

---

absence of other particular indicia supporting a contrary result in particular instances." 3 N. Singer, *Sutherland on Statutory Construction* § 62:1, 377-78 (7th ed. 2008). This "general rule applies with special force to statutes by which prerogatives, rights, titles, or interests of the government would be divested or diminished," and "[i]f there is doubt as to the construction of the statute, the doubt should be resolved in favor of the government." 82 *C.S.J. Statutes* § 389, 483-84 (2009).

[30] Interestingly, appellant Dr. Malouf in No. 03-14-00036-CV is one of the dentists Xerox seeks to have designated as a responsible third party in the State's underlying case against Xerox. *See* Xerox's Mot. for Leave to Designate Responsible Third Parties, MR.250-52.

As already discussed, applying Chapter 33 to the State's claims would severely restrict its rights and interests, and no "particular words" in Chapter 33 include the State.[31]

The assertion that failing to apply Chapter 33 would permit a "double recovery" by the State, see Xerox Pet. 19, also misstates both the legislative intent of the TMFPA and the nature of the State's claims. The TMFPA represents a specific statutory framework for deterring unlawful conduct and obtaining civil remedies for the Texas Medicaid program. In enacting the TMFPA, the Legislature deliberately limited the State's burden to establish a violation of the statute and recover civil remedies and penalties. And courts must defer to the plain language of a statute:

> 'Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. . . .They are not responsible for omissions in legislation.'

*Republicbank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (quoting *Simmons v. Arnim*, 220 S.W. 66 (Tex. 1920)). *See also Fitzgerald v.*

---

[31] Xerox may argue that a governmental unit may be named as a responsible third party under Chapter 33, and is therefore a "person" within the meaning of Chapter 33. Whether the sovereign may be named as a responsible third party in situations in which it is immune from suit is open to debate, but is ultimately not relevant to whether a TMFPA defendant may assert Chapter 33 to thwart the State's rights and interests in protecting its fiscal well-being through enforcement of a public welfare statute. *See generally* Justin Roberts & Randell Roberts, *Can Immune Parties Really be Responsible?: An Analysis of the Current Interpretation of the Responsible Third Party Statute and Its Vulnerability to Constitutional Challenge*, 43 St. Mary's L.J. 559 (2012).

*Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999) (holding that courts "may add words into a statutory provision only when necessary to give effect to clear legislative intent. Only truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written").

Xerox argues that the TMFPA's silence as to whether it permits "double recoveries" is somehow indicative of the legislature's intent that Chapter 33 should apply to the TMFPA, and to the State suing in its sovereign capacity.[32] Precisely the opposite is true. As the trial court noted:

> Each wrongful actor is liable for a civil remedy and penalty in multiples of the State's actual loss that is undiminished by the civil remedy and penalty assessed on or paid by another actor. What Xerox characterizes as a 'novel theory' is the plain meaning of the statute. There is no comparative fault, joint-and-several liability, contribution, single-satisfaction, or settlement credit in a TMFPA action.

Decision Letter, dated Feb. 10, 2015, at MR.232.

A person who commits an unlawful act does not escape liability because there may be multiple violators. Indeed, the unlawful acts listed in section 36.002 specifically contemplate multiple violators. *See* §§ 36.002(1), (2), (4), (9), (12). And because the TMFPA is a remedial statute subject to the liberal construction required by the Human Resources Code, it must be read broadly to ensure that its

---

[32] *See* Xerox's Pet. 26 (claiming that "[t]he TMFPA's silence regarding contribution, single satisfaction, et cetera cannot be interpreted as expressly permitting a double recovery.").

purposes are accomplished. *See* Tex. Hum. Res. Code Ann. § 11.002(b) ("This title shall be liberally construed in order that its purpose may be accomplished as equitably, economically, and expeditiously as possible."). In addition to relying primarily on the plain meaning, a court may not accept interpretations of a statute that defeat the purpose of the legislation, "so long as another reasonable interpretation exists." *Atacosa Cnty. v. Atacosa Cnty. Appraisal Dist*., 990 S.W.2d 255, 258 (Tex. 1999).

Also, as explained above, in a TMFPA action there is no "single, indivisible injury" committed by "joint tortfeasors." Consequently, there can be no "double recovery" to the State. As the Texas Supreme Court has noted:

> The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery *for the same injury*. Appellate courts have applied the one satisfaction rule when the defendants commit the same act as well as when defendants commit technically differing acts *which result in a single injury*.

*Stewart Title Guar. Co., v. Sterling*, 822 S.W.2d 1 (Tex. 1991) (emphasis added). Therefore, Chapter 33 does not, and cannot, apply to a law enforcement action brought by the State in its sovereign capacity, specifically in a TMFPA suit, and the trial court, therefore, did not abuse its discretion.

### E. Applying CPRC Chapter 33 to the TMFPA would violate tenets of statutory construction and lead to absurd and conflicting results.

A court's objective in construing a statute is to determine and give effect to the Legislature's intent. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19

S.W.3d 393, 402 (Tex. 2000) (citing *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998)). In doing so, it is helpful to consider the purpose behind a statute, as stated by the Legislature.

In 1995, the Legislature enacted the TMFPA, chapter 36 of the Human Resources Code. By enacting the TMFPA, the Legislature provided the State with a robust statute to investigate, prosecute, and deter fraud, waste, and abuse in the Texas Medicaid system, including providing specific investigative authority to the Office of Attorney General and stiff remedies and penalties for violations of the statute. The Legislature adopted chapter 36 to safeguard the public treasury and to protect the health and welfare of Medicaid recipients by preventing the diversion of Medicaid funding to private purposes.

In 1995, the Legislature also enacted certain provisions of CPRC Chapter 33, namely section 33.004 (Designation of Responsible Third Parties) and subsequently in 2003 significantly amended other provisions of Chapter 33 in its efforts to address tort reform.[33] Presumably, the Legislature was aware of both measures[34] and intended both of its enactments to be effective.[35] The application

---

[33] In 2003 the Amendments to Chapter 33 by the Texas Legislature were part of the same legislation enacting Chapter 74 of the CPRC (the Texas Medical Liability Act), which this Court recently found did not apply to the TMFPA. *Malouf v. State ex. rel. Ellis*, 461 S.W. 3d 641 (Tex. App.—Austin 2015, pet. requested).

[34] *See Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530-31 (Tex. 2002) (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it").

of CPRC Chapter 33 to the TMFPA would violate these tenets of statutory construction. Moreover, common sense dictates that the Legislature would not have enacted the TMFPA on the one hand to combat and deter fraud, waste and abuse in the Medicaid system, but on the other hand restrict the State's ability to enforce the TMFPA and limit its effect by subjecting the State and the TMFPA to the limitations and restrictions set forth in CPRC Chapter 33.

The forced application of Chapter 33 to the TMFPA fails because it would lead to absurd results and conflicts, not only within the two statutes but also with other Texas law. Any attempt at reconciliation leads inexorably to an absurd result that cannot have been the intent of the Legislature. *See, e.g.*, *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004) ("Courts should not read a statute to create such an absurd result.") (internal quotation omitted). Therefore, the Court must resort to Code Construction Act provisions for resolution of conflicting provisions. *See generally* Tex. Gov't Code ch. 311. Consideration of these principles leads only to the conclusion that Chapter 33 was not intended to apply to the TMFPA.

One absurd result from the forced application of Chapter 33 to the TMFPA, is that a defendant like Xerox could designate not just several Texas Medicaid providers as responsible third parties under Chapter 33, section 33.004, but

---

[35]     Tex. Gov't Code § 311.021(2).

designate hundreds, if not thousands, of Texas Medicaid providers from around the State of Texas who received even one payment over the eight year period Xerox was HHSC's vendor. Allowing a defendant in a TMFPA action to designate hundreds of Medicaid providers from across the State would require the trier of fact – a single jury – "to determine the percentage of responsibility, stated in whole numbers . . . for each defendant and for each responsible third party who has been designated." *See* CPRC § 33.003(a). Allowing such a designation would favor a defendant's private pecuniary interests over the public interest in punishing and deterring unlawful acts by a defendant against the Texas Medicaid program. This result violates Tex. Gov't Code § 311.021(5) and the presumption that the public interest is favored over the private.

Another absurd result from the forced application of Chapter 33 to the TMFPA would arise from the application of section 33.003(a) requiring the trier of fact to determine the percentage of responsibility of the "claimant." In other words, the forced application of Chapter 33 to the TMFPA would require a jury to determine the percentage of responsibility of the State of Texas itself, and could, in essence, make the State responsible for defendants' unlawful acts. Such a result would require a jury to focus not just on the unlawful acts of the defendant but to also focus and assess the general responsibility of any State employee or State

official. This forced application would impermissibly abrogate the sovereign immunity of the State.

Moreover, if section 33.001 were applied to the jury's determination, the State of Texas would be barred from recovering *any* civil remedies whatsoever from a defendant (and even potentially civil penalties as well) in a TMFPA enforcement case if the jury found the State of Texas's percentage of responsibility to be greater than 50 percent. *See* CPRC § 33.001. In other words, even if a jury found a defendant to have committed an "unlawful act" under the TMFPA, the State could not recover any civil remedies or penalties if the jury found the State more than 50 percent responsible. This forced application of CPRC sections 33.003(a) and 33.001 directly conflict with the TMFPA provisions addressing civil remedies and civil penalties.

These absurd results would not only undermine the Legislature's intended purpose of enacting a robust and effective TMFPA statute but would also conflict with case law recognizing that certain similar equitable and common law concepts and defenses do not apply to the State. For example, equitable defenses of limitations, estoppel and laches do not apply to the State in its sovereign capacity,[36]

---

[36] *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993); *see also City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835-36 (Tex. 1970); *Waller v. Sanchez*, 618 S.W.2d 407, 409 (Tex. App.—Corpus Christi 1981, no writ).

the affirmative defense of implied waiver does not run against the State,[37] and the so-called "government knowledge" defense is not an affirmative defense a defendant can assert.[38] And yet, the forced application of Chapter 33 to the TMFPA would allow a defendant to inject these defenses into a TMFPA enforcement action under the auspices of allocating proportionate responsibility. Such a result was not and could not have been the intent of the Legislature.

## II. Xerox has an adequate remedy at law because all of its complaints can be addressed on appeal.

Regardless of whether the trial court somehow clearly abused its discretion, the Court should still deny the request for mandamus relief because Xerox has failed to show that it lacks an adequate remedy by appeal. *See Walker v. Packer*, 827 S.W. 2d. at 840. *See also In re License Plates of Tex.*, No. 03-13-00671-CV, 2013 WL 6466919, at *1 (Tex. App.—Austin Nov. 27, 2013, no pet.) (holding that relator had adequate remedy by ordinary appeal of trial court's denial of leave to designate two state agencies as responsible third parties).

---

[37] Texas courts have recognized that the affirmative defense of implied waiver is not applicable to the State. *State v. Crawford,* 771 S.W.2d 624, 629-630 (Tex. App.—Dallas 1989, writ. denied). The defense of waiver can only be established against the State by evidence of the intentional relinquishment of the State's known rights by an authorized representative. *Id.*

[38] Federal Courts have made clear that a defendant cannot assert the so-called "government knowledge defense" as a defense in an FCA case. *See U.S. v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 263 (5th Cir. 2014) (citing *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 n.8 (5th Cir. 2003) ("This defense is inaptly named because it is not a statutory defense to FCA liability but a means by which the defendant can rebut the government's assertion of the 'knowing' presentation of a false claim.")).

**A. Only Xerox's conduct as the State's vendor is at issue in the instant matter, and Xerox has an adequate remedy on appeal.**

As a threshold matter, Xerox has an adequate remedy at law. The State seeks to only hold Xerox liable, for Xerox's conduct. Nevertheless, if Xerox believes some unknown number of potential parties is somehow responsible for Xerox's unlawful acts, Xerox is free to sue those parties (bringing common law, non-statutory causes of action). In fact, there are four lawsuits pending, brought by four dental providers against Xerox, in which Xerox is free to bring counterclaims.[39] Xerox is also free to initiate any number of lawsuits against providers for recovery of some alleged harm.

**1. The reasoning in *Andersen* is inapplicable in a statutory law enforcement case.**

None of the cases, or the reasoning, on which Xerox relies support Xerox's argument. The principal case upon which Xerox relies is *In re Arthur Andersen*. 121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Xerox cites *Andersen* for the proposition that there is no adequate remedy at law when a trial court erroneously denies a defendant the opportunity to join responsible third parties in a complex case where damage is caused by multiple tortfeasors. But *Andersen* is readily distinguishable.

---

[39] The four cases, all in Travis County District Court are: (1) *Harlingen Family Dentistry v. ACS State Healthcare*, Cause No. D-1-GN-14-000319; *Antoine Dental Center v. ACS State Healthcare*, Cause No. D-1- GN-14-000320; (3) *M&M Orthodontics v. ACS State Healthcare*, Cause No. D-1-GN-14-000321; (4) *Dr. Paul Dunn, DDS v. ACS State Healthcare*, Cause No. D-1-GN-14-000322.

43

Most importantly, the causes of action in *Andersen* are different from the State's TMFPA claims. Here, the only causes of action are codified in the TMFPA, none of which are based on tort, and only concern the acts and omissions of Xerox acting as HHSC's PA authorization vendor and whether Xerox misrepresented to HHSC Xerox's PA review process. In stark contrast, in *Arthur Andersen* a group of investors who had lost money in the Enron collapse sued the accounting firm Arthur Andersen for three common law causes of action: negligent misrepresentation, fraud, and conspiracy. *Id.* at 475. Each of the claims asserted by the plaintiffs are based on tort; and no party contested the applicability of chapter 33 in the *Andersen* proceedings.

The plaintiffs accused Andersen of providing "false and misleading information and misleading public information regarding Enron's financial condition." Andersen claimed it had been misled by Enron executives and attempted to name responsible third parties and to join third parties, particularly other financial institutions.[40] *Id.* The trial court denied Andersen's motion, and the company sought mandamus relief. *Id.* In granting mandamus relief, the *Andersen* court noted that the investor-plaintiffs made "broad sweeping allegations" regarding financial entities other than Andersen and other named defendants, and these unnamed entities would "play a pivotal role in the stories the Plaintiffs will

---

[40] Andersen sought leave to name responsible third parties under an earlier version of chapter 33. *Id.* at n.18.

44

tell the jury." *Id*. at 480-81. Regarding the latter two causes of action of fraud and conspiracy, the court reasoned that the other financial institutions were necessarily implicated in the allegations against Andersen.[41] *Id*. at 481-82 (holding that Andersen had shown that third parties were "implicated" in the plaintiffs' claims "to such an extent that the Plaintiffs could have sued each third party, and that each third party 'may' be liable to the Plaintiffs for all or a part of the 'damages claimed' against Andersen and the other defendants").

Here, the State seeks to hold Xerox liable for only Xerox's conduct, not the conduct of third parties. The State does not seek remedies from Xerox for any unlawful acts committed by third parties. Therefore, the reasoning and holding in *Andersen*, which focused on common-law fraud and conspiracy, are inapplicable here.[42] Additionally, any law enforcement action the State might bring against a

---

[41] For fraud, "third parties . . . need not have made representations directly to the Plaintiffs." *Id*. at 481 (noting that "each party to a fraudulent scheme is responsible for the acts of the other participants done in furtherance of the scheme and liable for fraud"). As for conspiracy, the court dismissed plaintiffs' claims that a third party "cannot be liable for conspiracy to commit fraud without being liable for the underlying fraud." *Id*. at 482-82 (noting that "[a] party may be liable for conspiracy to commit fraud without being liable for the underlying fraud).

[42] In most of the other 33 Texas cases citing *Andersen*, courts reference the opinion when analyzing the causes of action of either common law fraud or conspiracy. *See, e.g.*, *Parex v. ERG Resources*, 427 S.W.3d 407, 440 (Tex. App.—Houston [14th] 2014, pet. filed) (noting that "[f]or a party to be liable for fraud, it need not have made representations directly to the plaintiff"). This Court has cited to *Andersen* only once, in a case in which the Court had to determine whether a trial court correctly ruled whether a third party may be held jointly and severally liable for common-law fraud. *See Compton v. Sesso*, 2006 Tex. App. LEXIS 6322, at *18-19 (Tex. App.—Austin July 21, 2006, no pet.) (noting that a "party who benefits from a fraudulent transaction may be a principal in the fraud and may be held liable as such").

The Texas Supreme Court also only cites to *Andersen* once, and only in reference to the proposition that parties may plead conflicting claims and defenses if they "have a reasonable

45

dental provider would *only*, and *separately*, implicate that provider's misrepresentations or omissions and have no bearing on Xerox's own unlawful conduct.

## 2. Xerox fails to cite any case law to show it lacks an adequate remedy on appeal.

Xerox also makes several other arguments that fail to show it lacks an adequate remedy on appeal. First, the cases cited by Xerox for the proposition that not being allowed to name a responsible third party would somehow "skew" the proceedings are inapposite because the cases are all common-law negligence cases, none are statutory law enforcement cases brought by the State in its sovereign capacity.[43]

---

basis in fact [and] law." *JLG Trucking v. Garza*, 13-0978, 2015 Tex. LEXIS 346, at *16 (Tex. Apr. 24, 2015). This issue is not before the Court.

[43]     *See In re Altec Indus.*, No. 10-12-00207-CV, 2012 WL 2469542, at *2 (Tex. App.—Waco June 22, 2012, orig. proceeding) (mem. op.) (design defect, negligence, premises liability, and failure to warn) (noting that not naming responsible third party would "potentially affect the outcome of the litigation, and compromise the presentation of the defense in ways unlikely to be apparent in the appellant record"); *see also In re Oncor Elec. Delivery Co.*, 355 S.W.3d 304 (Tex. App.–Dallas 2011, orig. proceeding) (negligence) (after parents named owner of lifting apparatus as causing their child's injuries, defendant sought to name the individual who operated the apparatus as a Responsible third party); *In re Brokers Logistics*, 320 S.W.3d 402, 404 (Tex. App.—El Paso 2010, orig. proceeding) (negligence) (relator-defendant, as premises owner, sought leave to name doctor whose negligent treatment proximately caused plaintiff's injuries); *Jones v. Ray*, 886 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) (negligence) (holding that part of a group of healthcare providers who may have all contributed to plaintiff's paralysis could not sever case); *In re Greyhound Lines, Inc.*, No. 05-13-01646-CV, 2014 WL 1022329, at *1-3 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem. op.) (personal injury suit) (holding that where passenger sued bus company but not the owners of the other vehicle involved in crash, bus company could name owner of other vehicle as responsible third party).

Second, contrary to Xerox's assertion, no bright line rule exists in determining that an adequate appellate remedy is available. *See In re Prudential*, 148 S.W.3d at 136 (whether an adequate remedy by appeal exists "is not an abstract or formulaic" inquiry and "resists categorization").[44] In *Prudential*, the trial court's ruling would have forced the parties to have sixteen unnecessary trials and subject the parties to jury trials that had been waived in the underlying contract. *Id*. at 137-38. Here, even if the Court were to determine that Chapter 33 could apply, there could only be one trial—to determine only Xerox's liability. Xerox would still, therefore, have an adequate remedy by appeal.

In fact, this Court has held that an adequate remedy on appeal exists when a trial court denies leave to name a responsible third party. *See In re License Plates of Tex.*, No. 03-13-00671-CV, 2013 WL 6466919, at *1 (Tex. App.—Austin Nov. 27, 2013, orig. proceeding) (holding that adequate remedy on appeal existed after trial court denied leave to name responsible third parties).[45] And, Xerox cannot

---

[44]    *See* Xerox Pet. 30-31 (erroneously asserting that "[o]ther courts have adopted bright-line holdings that a trial court's improper denial of leave to designate a responsible third party can never be adequately remedied on appeal").

[45]    Other Texas intermediate courts have also held the same. *See, e.g., In re State Line Fireworks*, 387 S.W. 3d 27, 31-33 (Tex. App.—Texarkana 2012, orig. proceeding) (products liability) (holding that relator had adequate remedy on appeal where relator-defendant, if found liable, could then file suit against other parties); *In re Unitec Elevator Servs. Co.*, 178 S.W.3d 53, 66 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) (negligence, gross negligence) (noting that, in holding to deny mandamus, "whether mandamus relief is appropriate 'depends heavily on the circumstances presented'" (quoting *In re Prudential*, 148 S.W.3d at 137)); *In re Taymax Fitness*, No. 04-14-00119-CV, 2014 WL 1831100, (Tex. App.—San Antonio May 7, 2014, orig. proceeding) (personal injury claim) (holding that relator failed to show lack of

establish it lacks a remedy on appeal. *See, e.g.*, *id.*; *see also supra* note 42 (list of cases in which other intermediate courts have similarly denied mandamus after a trial court denied leave to name third parties).

Xerox then argues that the underlying instant matter is some unsettled area of the law, as mentioned in *Andersen.* In *Andersen* the question was whether Chapter 33 permits a "tortfeasor subject to a judgment to bring a post-judgment contribution claim against a tortfeasor who was not a party to the original suit." 121 S.W.3d at 485. Here, there are no tortfeasors. Rather, Xerox's–and only Xerox's–misrepresentations and omissions are at issue. Under the TMFPA, the trier of fact will only be able to determine Xerox's liability, and there will not be, and cannot be, an apportionment of liability to anyone else besides Xerox. Moreover, as discussed above, Chapter 33 does not apply to law enforcement actions brought by the State in its sovereign capacity.

Lastly, Xerox makes a curious argument that because the State's recovery might be large, an adequate remedy on appeal is somehow not available. *See* Xerox Pet. 28. No case law supports this reasoning.

---

adequate remedy on appeal); *In re Inv. Capital Corp. & Serv. Corp. Int'l*, No. 14-09-00105-CV 2009 WL 310899, at *2 (Tex. App.—Houston [14[th] Dist.] Feb. 4, 2009, orig. proceeding) (negligence, gross negligence, premises liability) (distinguishing *Andersen*, not because of the type of case, but because the facts were, unlike in *Andersen*, "relatively straightforward and the trial court's error, if any, can be corrected through the regular appellate process"); *In re Wilkerson*, No. 14-08-00376-CV, 2008 WL 2777418, at *2 (Tex. App.—Houston [14th Dist.] June 6, 2008, orig. proceeding) (negligence) (in denying mandamus, holding that relator had adequate remedy by appeal).

**B. Factors weigh in favor of denying Xerox's Petition.**

Denying Xerox's Petition will actually save money—for both the State and Xerox. *Cf. Walker v. Packer*, 827 S.W.2d at 842 ("An appellate remedy is not inadequate merely because it might involve more delay or cost than mandamus."). Here, by trying the instant underlying law enforcement action with Xerox as the only defendant will result in less delay and less expense. [46]

And, in considering the public interest, the State has an interest in having its claims timely heard and not being unnecessarily subjected to potentially hundreds of putative third parties being improperly designated and/or added to its lawsuit against Xerox. *See In re Prudential*, 148 S.W.3d at 136 (weighing whether denying mandamus would "spare . . . the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings"). Unnecessarily

---

[46] Of the three cases Xerox cites to support its position, one of the cases actually supports the State's position: denying mandamus will save both parties and the judicial system unnecessary time, expense, and extra trials; and the latter two are inapposite—focusing on improper venue transfer. *See In re State*, 355 S.W.3d 611, 612 (Tex. 2011) (holding that trial court abused discretion in ordering severance of state's condemnation suit into eight separate proceedings after landowner subdivided the one parcel into eight tracts); *see also In re Team Rocket*, 256 S.W.3d 257 (Tex. 2008) (holding that wrongful death action was improperly transferred to different venue); *In re Masonite Corp.*, 997 S.W.2d 194 (Tex. 1999) (granting mandamus relief after trial court granted motion to transfer venue of non-residents homeowners in defective building materials suit).

Here, denying mandamus will not result in multiple identical trials regarding the same facts; rather, the only liability to be determined in this suit is Xerox's liability as the State's vendor. And any potential suit the State might bring against a dental provider will only concern *that particular provider's* actions, and only *that provider's liability* to the State. *See* trial court letter, dated Apr. 28, 2015 ("State v. Xerox will proceed to trial more quickly without third parties, and the trial will be shorter and less complicated . . ."), at MR.633.

expanding this case beyond the existing two parties would exponentially increase the costs to the State and would significantly delay the resolution of the case. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) ("wasted trials are not the most efficient use of the state's judicial resources"). The *USAA* court also considered, as one of the factors in whether to deny mandamus, if granting of mandamus would "thwart the legislative intent" of the statute in question. *Id.* at 314. Here, granting mandamus and applying Chapter 33 to the TMFPA would thwart the Legislature's intent of having an effective statute, the TMFPA, to combat and deter unlawful acts against the Texas Medicaid program.

## **PRAYER**

Because the third party claims asserted in Xerox's First Amended Answer and Original Third Party Petition have no basis in law, the trial court did not abuse its discretion in striking those claims, pursuant to Texas Rule of Civil Procedure 38. Xerox's allegations, even if true, do not entitle Xerox to the relief it sought from the trial court. Moreover, Xerox has an adequate remedy on appeal. The State prays the Court will deny Xerox's Petition.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

50

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

/s/ Raymond C. Winter_____
RAYMOND C. WINTER
State Bar No. 21791950
Chief, Civil Medicaid Fraud Division
(512) 936-1709 direct
raymond.winter@texasattorneygeneral.gov
REYNOLDS B. BRISSENDEN
State Bar No. 24056969
(512) 936-2158 direct
reynolds.brissenden@texasattorneygeneral.gov
Assistant Attorneys General
P. O. Box 12548
Austin, Texas 78711-2548
(512) 499-0712 facsimile

## CERTIFICATE OF COMPLIANCE

I certify that this Brief in Response to Petition for Writ of Mandamus has 13,984 words.

/s/ Raymond C. Winter
Raymond C. Winter

## CERTIFICATE OF SERVICE

I certify that I have on this 13th day of August 2015, served copies of this *Response to Petition for Writ of Mandamus* to the following:

*Via efile:*

| | |
|---|---|
| Eric J.R. Nichols | Constance H. Pfeiffer |
| Gretchen Sween | Beck Redden LLP |
| Christopher R. Cowan | 1221 McKinney St., Suite 4500 |
| Beck Redden LLP | Houston, Texas 77010 |
| 515 Congress Ave. Suite 1900 | cpfeiffer@beckredden.com |
| Austin, Texas 78701 | COUNSEL FOR RELATORS |

51

enichols@beckredden.com
gsween@beckredden.com
ccowan@beckredden.com
COUNSEL FOR RELATORS

Robert C. Walters                          C. Andrew Weber
Gibson, Dunn & Crutcher LLP                Kelly Hart & Hallman LLP
2100 McKinney Ave., Ste 1100               301 Congress Ave., Suite 2000
Dallas, Texas 75201                        Austin, Texas 78701
rwalters@bigsondunn.com                    andrew.weber@kellyhart.com
COUNSEL FOR RELATORS                       COUNSEL FOR RELATORS

                          /s/ Raymond C. Winter
                          Raymond C. Winter

# Appendix A

## Dear Manual User:

Welcome to the 2009 *Texas Medicaid Provider Procedures Manual.* To enhance usability, this manual is available on a searchable CD-ROM and on the TMHP website at www.tmhp.com.

**Note:** *All users who access www.tmhp.com are required to accept the American Medical Association (AMA) End-user Agreement on the use of Current Procedural Terminology (CPT). For each computer that accesses the TMHP website, the agreement must be accepted every 30 days from the last date on which the agreement was accepted by the user. If the end-user agreement is not accepted on a particular computer every 30 days, no user will be able to enter the website from that computer. For additional information about the AMA and CPT, refer to www.ama-assn.org/ama/pub/category /3113.html.*

A *Claims Filing Resources* table is located at the end of each service section with page references to all claim instructions, appendices, Medicaid forms, and claim form examples associated with the service.

This manual contains both the Primary Care Case Management (PCCM) and Texas Health Steps (THSteps) manuals. PCCM information can be found primarily in Section 7, though relevant information can be found in other sections. THSteps information is contained in Section 43 and throughout the manual.

Texas Medicaid policy published in this manual represents policy implemented on or before October 31, 2008. Policy updates effective after October 31, 2008, are published bimonthly in the *Texas Medicaid Bulletin.*

The November/December 2008 *Texas Medicaid Bulletin* and all *Texas Medicaid Bulletins* through and including the September/October 2009 *Texas Medicaid Bulletin* supplement the 2009 *Texas Medicaid Provider Procedures Manual* and update the policy contained herein.

The *Texas Medicaid Provider Procedures Manual* serves as a comprehensive guide for Texas Medicaid providers, and contains information about Texas Medicaid benefits, policies, and procedures. The manual also includes an overview of the State of Texas Medicaid Managed Care programs to include the State of Texas Access Reform (STAR), STAR+PLUS, PCCM, and NorthSTAR. The information regarding the State of Texas Medicaid Managed Care programs, including Section 7, is not an exhaustive policies and procedures guide. For specific managed care information, contact the individual health plans participating in STAR, STAR+PLUS, and NorthSTAR. For PCCM, refer to the TMHP Telephone and Address Guide included in this manual.

## Provider Manual Overview

The 2008 *Texas Medicaid Provider Procedures Manual* is divided into three parts, including:

### Part I: Provider Information

The information in Part I is for all health-care providers who are enrolled in Texas Medicaid and provide services to Texas Medicaid clients. In Part I, providers find instructions for providing allowable services and receiving appropriate reimbursement for services. The following sections are included in Part I:

- Introduction
- TMHP Telephone and Address Guide
- *Section 1.* Provider Enrollment and Responsibilities
- *Section 2.* Texas Medicaid Reimbursement
- *Section 3.* TMHP Electronic Data Interchange (EDI)
- *Section 4.* Client Eligibility
- *Section 5.* Claims Filing
- *Section 6.* Appeals
- *Section 7.* Managed Care

### Part II: Texas Medicaid Services

Part II contains a section for each Texas Medicaid service with information on health-care policy, procedures, and claims filing pertaining to each provider type.

CPT only copyright 2008 American Medical Association. All rights reserved.

## 19.4.2 THSteps Dental Eligibility

The client must be Medicaid- and THSteps-eligible (birth through 20 years of age) at the time of the service request and service delivery. However, Medicaid-approved orthodontic services already in progress may be continued even after the client loses Medicaid eligibility if the orthodontic treatment is begun before the loss of Medicaid eligibility and before the day of the client's 21st birthday and is completed within 36 months. Medicaid-approved orthodontic services already in progress may be continued even after the client loses Medicaid eligibility if the orthodontic treatment is:

- Begun before the loss of Medicaid eligibility
- Begun before the day of the client's 21st birthday
- Completed within 36 months.

The client is not eligible for THSteps dental preventive or therapeutic benefits if the client's Medicaid Identification Form (Form H3087) or Medicaid Eligibility Verification Form (Forms H1027 and H1027-A-C) states any of the following:

- Emergency care only
- Presumptive eligibility (PE)
- Qualified Medicare beneficiary (QMB)
- Women's Health Program

A check mark will be present in the "Dental" column of the client's Medicaid Identification Form (Form H3087) to indicate that the client is eligible for dental services. A message (THSteps Dental checkup due) may appear below the client's name on the monthly client Medicaid Identification Form (Form H3087) stating the client is due for a dental checkup, which serves as a reminder to parents to contact their child's dentist and schedule an appointment for their periodic dental checkup. This message is printed on the H3087 when the client has not received any dental services (diagnostic, preventive, therapeutic, or orthodontic) for a period of six months.

Clients are not eligible for CCP services on or after their 21st birthday, but are eligible for non-CCP THSteps dental services (see fee schedule for CCP and non-CCP reimbursed services) through the end of the month of their 21st birthday.

**Note:** If a client has a birthday on any day except the first day during the month, the new eligibility period is considered to begin on the first day of the following month.

## 19.4.3 First Dental Home

First Dental Home is an initiative designed to establish a dental home, provide preventive care, identify oral health problems, and provide treatment and parental/guardian oral health instructions as early as possible.

A First Dental Home visit includes, but is not limited to:

- Comprehensive oral examination
- Oral hygiene instruction with primary caregiver

- Dental prophylaxis, if appropriate
- Topical fluoride application using fluoride varnish, if appropriate
- Caries risk assessment
- Dental anticipatory guidance

Procedure code D0145 bundles the above services for THSteps clients age 6 months of age through 35 months of age. THSteps dentists and Federally Qualified Healthcare Centers (FQHCs) that have completed training and been certified to participate in the First Dental Home initiative may be reimbursed for procedure code D0145. FQHC providers attending the training will be certified at the facility level.

Procedure code D0120, D0150, D1120, D1203, or D1206 are denied if procedure code D0145 is billed on the same date of service by any provider. A First Dental Home examination is limited to ten services per client lifetime with at least 60 days between visits. This service is limited to once per day.

## 19.5 ICF-MR Dental Services

ICF-MR dental services are mandated by Medicaid, and reimbursement is provided for treatment of dental problems for Medicaid-eligible residents of ICF-MR facilities who are 21 years of age or older. Residents of ICF-MR facilities who are 20 years of age or younger receive services through the regular THSteps Program. Eligibility for ICF-MR services is determined by DADS.

Procedure codes without a CCP designation in the *Limitations* column of the dental fee schedule may be billed in a routine manner for ICF-MR clients.

These procedures must be documented as medically necessary and appropriate. ICF-MR clients are not subject to periodicity for preventive care.

For procedure codes with a CCP designation, a provider may request authorization with documentation or provide documentation on the submitted claim.

**Refer to:** "Medicaid Dental Fee Schedule" on page 19-11.

## 19.6 THSteps and ICF-MR Provision of Services

All THSteps and ICF-MR dental services shall be performed by the Medicaid-enrolled dental provider except for permissible work delegated to a licensed dental hygienist, dental assistant, or dental technician in a dental laboratory on the premises where the dentist practices, or in a commercial laboratory registered with the Texas State Board of Dental Examiners (TSBDE). The *Texas Dental Practice Act* and the rules and regulations of the TSBDE (22 TAC, Part 5) define the scope of work that dental auxiliary personnel may perform. Any deviations from these practice limitations shall be reported to the TSBDE and HHSC, and could result in sanctions or other actions imposed against the provider.

CDT only copyright 2008 American Dental Association. All rights reserved.

## 19.18  Hospitalization and ASC/HASC

Dental services performed in an ASC, hospital ambulatory surgical center (HASC), or a hospital (either as an inpatient or an outpatient) may be benefits of THSteps based on the medical or behavioral justification provided, or if one of the following conditions exist:

- The procedures cannot be performed in the dental office.
- The client is severely disabled.

Contact the individual HMO for precertification requirements related to the hospital procedure. If services are precertified, the provider receives a precertification number effective for 90 days.

In those areas of the state with Medicaid managed care, the provider should contact the managed care plan for specific requirements or limitations. It is the dental provider's responsibility to obtain precertification from the client's HMO or managed care plan for facility and general anesthesia services if it is required.

To be reimbursed by the HMO, the provider must use the HMO's contracted facility and anesthesia provider. These services are included in the capitation rates paid to HMOs, and the facility/anesthesiologist risk nonpayment from the HMO without such approval. Coordination of all specialty care is the responsibility of the client's primary care provider. The primary care provider must be notified by the dentist and/or the HMO of the planned services.

Dentists providing sedation/anesthesia services must have the appropriate current permit from the TSBDE for the level of sedation/anesthesia provided.

The dental provider must be in compliance with the guidelines detailed in "Dental Therapy Under General Anesthesia" on page 19-35.

**Note:** *Post-treatment authorization will not be approved for codes that require mandatory prior authorization.*

## 19.19  Orthodontic Services (THSteps)

Orthodontic services for cosmetic purposes only are not a benefit of Texas Medicaid. Orthodontic services are limited to the treatment of children 12 years of age or older with severe handicapping malocclusion, children birth through 20 years of age with cleft palate, or other special medically necessary circumstances as outlined in Benefits and Limitations below.

### 19.19.1  Benefits and Limitations

Orthodontic services include the following:

- Correction of severe handicapping malocclusion as measured on the Handicapping Labiolingual Deviation (HLD) Index. Refer to page 19-45 for information on how to score the HLD. A minimum score of 26 points is required for full banding approval (only permanent dentition cases are considered).

**Exception:** *Retained deciduous teeth and cleft palates with gross malocclusion that will benefit from early treatment. Cleft palate cases do not have to meet the HLD 26-point scoring requirement. However, it is necessary to submit a sufficient narrative and/or outline of the proposed treatment plan when requesting authorization for orthodontic services on cleft palate cases.*

- Crossbite therapy.
- Head injury involving severe traumatic deviation.

The following limitations apply for orthodontic services:

- Orthodontic services for cosmetic purposes only are not a benefit of Texas Medicaid or THSteps.
- Orthognathic surgery, to include extractions, required or provided in conjunction with the application of braces must be completed while the client is Medicaid-eligible in order for reimbursement to be considered.
- Except for D8660, all orthodontic procedures require prior authorization for consideration of reimbursement.
- The THSteps client must be Medicaid/THSteps-eligible when authorization is requested and the orthodontic treatment plan is initiated. It is the provider's responsibility to see that the client has a current Medicaid Identification Form (Form H3087) or Medicaid Eligibility Verification Form (Forms H1027 and H1027-A-C) and that the date of birth on the form indicates the client is 20 years of age or younger and no limitations are indicated.
- Prior authorization is issued to the requesting provider only and is not transferable to another provider. If the client changes providers or if the provider stops practicing dentistry in Texas Medicaid for whatever reason, a new prior authorization must be requested.

**Refer to:** "Transfer of Orthodontic Services" on page 19-40.

The following procedure codes, policies, and limitations are applied to the processing and payment of orthodontic services under THSteps dental services:

- Procedure code D8660 is allowed when:
  - The client is referred to an orthodontist for a determination of whether orthodontic services are indicated and to determine the appropriate time to initiate such services.
  - The client is referred to an orthodontist and elects to receive services from another orthodontic provider because of justifiable reasons.
  - Repeat visits at different age levels are required to determine the appropriate time to initiate orthodontic treatment.
- Procedure code D8680 is payable for one retainer per arch, per lifetime, and each retainer may be replaced once because of loss or breakage (prior authorization is required).
- Procedure code D8670 should be billed only when an adjustment to the appliances is provided and may not be billed before the date the orthodontic adjustment was performed. The number of visits for monthly adjust-

CDT only copyright 2008 American Dental Association. All rights reserved.

ments to the appliances is restricted to the number that was authorized in the treatment plan. However, the number of monthly visits may be amended with appropriate documentation of medical necessity while the client is Medicaid eligible.

- Procedure code D8670 is paid only in conjunction with a history of braces (code D8080), unless special circumstances exist.
- All orthodontic codes and appliances are global fees.
- Separate fees for adjustments to retainers are not payable.
- The appropriate code should be billed for those appliances required as part of the treatment of cleft palate cases.

Special orthodontic appliances may also be used with full banding and crossbite therapy with approval by the TMHP Dental Director.

- Procedure codes D5951, D5952, D5953, D5954, D5955, D5958, D5959, and D5960 are to be used as applicable with documentation of medical necessity. Otherwise, use the appropriate special orthodontic appliance code.
- Full banding is allowed on permanent dentition only, and treatment should be accomplished in one stage and is allowed once per lifetime.

*Exception: Cases of mixed dentition when the treatment plan includes extractions of remaining primary teeth or cleft palate.*

- Crossbite therapy is allowed for primary, mixed, or permanent dentition.
- Providers must not request crossbite correction (limited orthodontics) for a mixed dentition client when there is a need for full banding in the adult teeth. Crossbite therapy is an inclusive charge for treating the crossbite to completion, and additional reimbursement is not provided for adjustments or maintenance.
- If a case is not approved, the dentist may file a claim for payment of the diagnostic workup necessary to obtain the authorization using procedure codes D0330, D0340, D0350, and D0470. The dentist may receive payment under these procedure codes for no more than two cases out of every ten cases denied. The dentist should determine if the client's condition meets orthodontic benefit criteria before performing a diagnostic workup.
- Procedure codes D8080, D8050, and D8060, are limited to one per lifetime.
- Comprehensive orthodontic services (procedure code D8080) are restricted to clients who are 12 years of age or older or clients who have exfoliated all primary dentition. Crossbite therapy includes diagnosic cast services.

## 19.19.2 Mandatory Prior Authorization

Prior authorization is required for all THSteps orthodontic services except for procedure code D8660. The prior authorization request must contain the DOS that the orthodontic diagnostic tools were produced. If the request is approved, the date that the records were produced is considered to be the date on which orthodontic treatment begins.

**Refer to:** "THSteps Dental Mandatory Prior Authorization Request Form" on page B-111.

If orthodontic treatment is medically indicated, providers are responsible for obtaining prior authorization for a complete orthodontic treatment plan while the client is eligible for Medicaid and THSteps and 20 years of age or younger.

Submission of diagnostic casts are not required when requesting prior authorization for procedure codes D8050, D8060, or D8080.

Prior authorization is a condition for reimbursement; it is not a guarantee of payment.

Upon receipt of prior authorization of complete treatment plans, providers are to advise clients that they will be able to receive the approved treatment services (e.g. orthodontic adjustments, bracket replacements and retainers), even if they lose Medicaid eligibility or reach 21 years of age. Approved orthodontic treatment must be initiated before the loss of Medicaid eligibility and completed within 36 months of the authorization date.

*Note: Providers must submit all orthodontic services for Medicaid managed care clients following these guidelines. STAR and STAR+PLUS are not responsible for orthodontic services.*

Requests for orthodontic services must be accompanied by all of the following documentation:

- An orthodontic treatment plan. The treatment plan must include all procedures required to complete full treatment (such as, extractions, orthognathic surgery, upper and lower appliance, monthly adjustments, anticipated bracket replacements, appliance removal if indicated, special orthodontic appliances, etc.). The treatment plan should incorporate only the minimal number of appliances required to properly treat the case. Requests for multiple appliances to treat an individual arch are reviewed for duplication of purpose.
- Cephalometric radiograph with tracing models.
- Completed and scored HLD sheet with diagnosis of Angle class (26 points required for approval of non-cleft palate cases).
- Facial photographs.
- Full series of radiographs or a panoramic radiograph; diagnostic-quality films are required (copies are accepted and radiographs will not be returned to the provider).

- Any additional pertinent information as determined by the dentist or requested by TMHP's Dental Director Requests for crossbite therapy require properly trimmed models to be retained in the office and must demonstrate the following criteria:
  - Posterior teeth. Not end to end, but buccal cusp of upper teeth should be lingual to buccal cusp of lower teeth.
  - Anterior teeth. The incisal edge of upper should be lingual to the incisal of the opposing arch.

The dentist should be certain that radiographs, photographs, and other information are properly packaged to avoid damage. TMHP is not responsible for lost or damaged materials.

**Refer to:** "THSteps Dental Mandatory Prior Authorization Request Form" on page B-111.

### 19.19.3  Completion of Treatment Plan

If a client reaches 21 years of age or loses Medicaid eligibility before the authorized orthodontic treatment is completed, reimbursement is provided to complete the orthodontic treatment that was authorized and initiated while the client was 20 years of age or younger, eligible for Medicaid and THSteps, and completed within 36 months. Any orthodontic-related service requested (e.g., extractions or surgeries) must be completed before the loss of client eligibility. Services cannot be added or approved after Medicaid/THSteps eligibility has expired.

### 19.19.4  Premature Removal of Appliances

The overall fee for orthodontic treatment (D8080) includes the removal of orthodontic brackets and/or treatment appliances. Procedure code D7997 may be used only when the appliances were placed by a different provider with an unaffiliated practice (not a partner or office-sharing arrangement) and one of the following conditions exist:

- There is documentation of a lack of cooperation from the client.
- The client requests premature removal and a release form has been signed by the parent, guardian, or client if he is at least 18 years of age.

Providers must keep a copy of the release form on file and are responsible for this documentation during a review process.

### 19.19.5  Transfer of Orthodontic Services

Prior authorization issued to a dental provider for orthodontic services is not transferable to another dental provider. The new provider must submit to TMHP a new prior authorization request in order to be approved to complete the orthodontic treatment initiated by the original provider.

The following supporting documentation must accompany the new request for orthodontia services and must include the DOS the orthodontic diagnostic tools were produced:

- All of the documentation as required for the original provider.
- The reason the client left the previous provider, if known.
- An explanation of the treatment status.
- A compete treatment plan addressing all procedures for which authorization is being requested (such as the number of monthly adjustments or retainers required to complete the case).
- A full diagnostic workup (D8080) with an HLD Index. The score of 26 points will be modified according to any progress achieved.

*Exception: The prior authorization requests for clients who initiate orthodontic services before becoming eligible for Medicaid do not require models or the HLD score sheet, nor does the client have to meet the HLD Index of 26 points. However, a complete plan of treatment is required.*

*Note: Medicaid clients who initiate orthodontic services privately (e.g. pay out of pocket for the orthodontic workup and/or initial banding, etc.) while Medicaid eligible due to not meeting the HLD index 26-points, are not eligible to have their orthodontic services transferred to and reimbursed by Medicaid.*

To request prior authorization for completion of the orthodontic treatment initiated by another provider, complete a THSteps Dental Mandatory Prior Authorization Request Form and send it with the complete plan of treatment and appropriate documentation for orthodontic services and/or crossbite therapy to the TMHP Dental Director at the following address:

Texas Medicaid & Healthcare Partnership
THSteps and ICF-MR Dental Authorization and Information
PO Box 202917
Austin, TX 78720-2917

### 19.19.6  Comprehensive Orthodontic Treatment

Comprehensive orthodontic services (procedure code D8080) are restricted to clients who are 12 years of age or older or clients who have exfoliated all primary dentition.

National procedure codes do not allow for any work-in-progress or partial billing by separating the three orthodontic components: diagnostic workup, orthodontic appliance (upper), or orthodontic appliance (lower).

When billing for comprehensive orthodontic treatment, D8080, three local codes must be submitted as remarks codes along with code D8080. Local codes (Z2009, Diagnostic workup approved, Z2011, Orthodontic

CDT only copyright 2008 American Dental Association. All rights reserved.

## 19.21.1 HLD Score Sheet

This sheet and a Boley Gauge are required to score.

Procedure:

- Occlude client or models in centric position.
- Record all measurements rounded-off to the nearest millimeter.
- Enter a score of 0 if the condition is absent.
- Overjet is measured from the most protrusive incisor.
- Overbite is measured from the labio-incisal edge of overlapped anterior tooth or teeth to point of maximum coverage.
- Ectopic eruption and anterior crowding: Do not double-score. Record the more serious condition.

**PLEASE PRINT CLEARLY:**

| Client Name: | | Date of birth: | | Medicaid ID: | |
|---|---|---|---|---|---|
| Address: (*Street/City/County/State/Zip Code*) | | | | | |
| CONDITIONS OBSERVED | | | | HLD SCORE | |
| **Cleft Palate** | | | Score 15 | | |
| **Severe Traumatic Deviations** <br> Trauma/Accident related only | | | Score 15 | | |
| **Overjet** in mm. *Minus 2 mm.* <br> *Example: 8 mm. – 2 mm. = 6 points* | | | | = | |
| **Overbite** in mm. *Minus 3 mm.* <br> Example: 5 mm. – 3 mm. = 2 points | | | | = | |
| **Mandibular Protrusion** in mm. <br> See definitions/instructions to score (previous page) | | | x5 | = | |
| **Open Bite in mm.** <br> See definitions/instructions to score (previous page) | | | x4 | = | |
| **Ectopic Eruption** (Anteriors Only) <br> *Reminder: Points cannot be awarded on the same arch <br> for Ectopic Eruption and Crowding* | | | Each tooth x3 | = | |
| **Anterior Crowding** <br> *10 point maximum total for both arches <br> combined* | Max. | Mand. | = 5 pts. each arch | = | |
| Labio-lingual Spread in mm. | | | | = | |
| TOTAL | | | | = | |
| Diagnosis | | For TMHP use only <br> Authorization Number | | | |
| Examiner: | | Recorder: | | | |
| Provider's Signature <br><br> Please submit this score sheet with records | | | | | |

CDT only copyright 2008 American Dental Association. All rights reserved.

# Appendix B

CAUSE NO. D-1-GV-14-000581

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| XEROX CORPORATION, XEROX | § | TRAVIS COUNTY, TEXAS |
| STATE HEALTHCARE, LLC and | § | |
| ACS HEALTHCARE, LLC, | § | |
| Defendants | § | |
| | § | |
| ATLAS DENTAL, LP, et al. | § | |
| Intervenors. | § | 53rd JUDICIAL DISTRICT |

## STATE OF TEXAS' RESPONSE IN OPPOSITION TO THE XEROX PARTIES' PARTIALLY UNOPPOSED MOTION TO CONSOLIDATE

TO THE HONORABLE JUDGE YELENOSKY:

The State of Texas ("Texas") hereby files its Response in Opposition to the Xerox Parties' ("Xerox") Partially Unopposed Motion to Consolidate and sets forth the following:

## I.    INTRODUCTION

The State opposes consolidation. Common questions of law and fact do not exist among all six cases[1] and the cases should not be consolidated. The State's case against Xerox, the instant case, is an action brought under the Texas Medicaid Fraud Prevention

---

[1] The six cases Xerox seeks to consolidate are the following: (1) *Harlingen Family Dentistry, P.C., et al. v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000319; (2) *Antoine Dental Center v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000320; (3) *M&M Orthodontics, PA, et al. v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000320; (4) *Dr. Paul Dunn, DDS v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000322; (5) *The State of Texas v. Xerox Corporation, et al.*, Cause No. D-1-GV-14-000581 ("Texas' TMFPA Case"); and (6) *Texas Health and Human Services Commission v. Xerox Healthcare, LLC*, Cause No. D-1-GN-14-003203 ("Texas' HHSC Injunction Case"). See The Xerox Parties' Partially Unopposed Motion to Consolidate ("Xerox Motion") at 3.

Act ("TMFPA"), which includes no statutory authority for consolidation. The suits brought by the various dental providers involve causes of action with distinctly different elements than the TMFPA violations. Additionally, Texas's TMFPA Case, involving claims against Xerox for violations of the TMFPA and Texas HHSC's Injunction Case involve separate and distinct causes of action, distinct questions of law and facts and were properly filed separately and should remain separate. Finally, consolidation of six separate cases into a single case for trial will not further promote judicial economy or convenience. Rather, consolidation of the six cases will create an unwieldy single case involving 27 individually named Providers (some of whom are currently in bankruptcy) each asserting 13 claims (351 separate Provider common law claims in total), *plus* Texas's TMFPA claims, *plus* Texas HHSC's Injunction claim, *plus* Xerox's 27 third-party claims for contribution against 27 Providers, all to be tried to the same jury and resolved by one final judgment. As demonstrated below, whatever judicial economy or convenience that may be gained (if any) is far outweighed by the very real and likely risk of an unfair outcome because of jury confusion and prejudice that would result from consolidating all six cases together into a single case.

## II.   ARGUMENT

### A.   The TMFPA Does Not Allow for Intervention or Consolidation of Other Parties' Claims into a TMFPA Case

Twenty providers, all represented by the same counsel who also represent the seven providers in the four Separately Filed Provider Cases,[2] have wrongly intervened in Texas's TMFPA Case. Texas has properly filed a Motion to Strike their interventions. See Motion to Strike Petitions in Intervention, Answer and Pleas to the Jurisdiction filed June 9, 2014, in Texas's TMFPA Case (the arguments set forth therein are re-alleged and incorporated by reference herein). As explained in the Motion to Strike Intervention, there is no basis for the providers to intervene in Texas's TMFPA case. See Id. at pp. 9-13. Likewise, consolidation of Texas's TMFPA Case is not a permissible alternative to wrongly intervening in a case. Furthermore, consolidation of the providers' common law claims and Xerox's contribution claims do not make them any more relevant or common to Texas's TMFPA Case against Xerox. See Section C, *infra*.

Furthermore, twenty providers wrongly intervened in Texas HHSC's Injunction Case and HHSC has properly filed a Motion to Strike their intervention. See Motion to Strike Intervention filed September 3, 2014, in Texas HHSC's Injunction Case (the arguments set forth therein are re-alleged and incorporated by reference herein). Consolidating these cases would allow the providers to wrongly intervene in a case and

---

[2] The following cases are collectively referred to as the 4 Separately Filed Provider Cases: (1) *Harlingen Family Dentistry, P.C., et al. v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000319 ("Harlingen"); (2) *Antoine Dental Center v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000320 ("ADC"); (3) *M&M Orthodontics, PA, et al. v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000320 ("M&M"); (4) *Dr. Paul Dunn, DDS v. ACS State Healthcare, LLC*, Cause No. D-GN-14-000322 ("Dunn").

successfully circumvent the Court's ruling on Texas's Motion to Strike Intervention in Texas HHSC's Injunction Case by also seeking consolidation.

**B. Consolidation of Six Separate Cases Into a Single Case For Trial Will Not Promote Judicial Economy or Convenience, and Will Create An Unwieldy Single Case Resulting in Jury Confusion and Prejudice.**

**1. Consolidation will promote jury confusion.**

In deciding whether to consolidate cases, a trial court must weigh the judicial economy and convenience that may be gained by the consolidation, against the risk of an unfair outcome because of prejudice or jury confusion. TEX. R. CIV. P. 174; *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 208 (Tex. 2004) ("In determining whether various claims are appropriate for consolidation, 'the dominant consideration in every case is whether the trial will be fair and impartial to all parties"); *Owens-Corning Fiberglass Corp. v. Martin*, 942 S.W.2d 712, 716 (Tex. App. –Dallas 1997). "Consolidation should be avoided if it would cause 'confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence.'" *In re Van Waters & Rogers, Inc.*, 145 S.W.3d at 208.

The providers in the 4 Separately Filed Provider Cases intervened in both Texas' TMFPA Case and Texas HHSC's Injunction Case. See Pleas in Intervention filed by Harlingen, ADC, M&M, and Dunn on May 15, 2014 in Texas's TMFPA Case, and Petition in Intervention filed by Intervenors in Texas HHSC's Injunction Case on September 3, 2014 at 2 (identifying the Harlingen, ADC, M&M and Dunn providers as Intervenors). Consolidating these 4 Separately Filed Provider Cases with the two Texas cases against Xerox, would result in a single case consisting of Texas, the Xerox Parties

and 27 individually named Providers as parties.[3] These 27 Individually Named Providers (some of whom are currently and actively in bankruptcy[4]), have each asserted 9 separate common law claims against Xerox and 4 separate common law claims against Texas (13 total claims), for a combined *total of 351 separate claims*. Courts are to proceed with "extreme caution" when consolidating such claims. *See In re Van Waters & Rogers, Inc.*, 145 S.W.3d at 208 (consolidation of common law claims such as torts should only be considered once there "'has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs' [contentions].'"). With the exception of limited initial sets of written discovery, any substantive discovery in these cases has yet to be conducted. In addition, the questions of fact for the jury and the claims that will be addressed by the jury have not yet been determined. Consolidation at this stage of the litigation would be premature.

Furthermore, consolidating all six cases into one case would require all *351 separate claims* brought by the Providers against Xerox and Texas, *plus* Texas's TMFPA

---

[3] The 27 Individually Named Providers are as follows: Atlas Dental, LP, Dr. Hieu Huynh, Irma Cantu-Thompson, DDS, PC, Dr. Irma Cantu-Thompson, Dr. Stephen Chu, Dr. Richard F. Herrscher, MAN & CFN Ortho, PLLC, Navarro Orthodontix of Irving, PC, Navarro Orthodontix of Ft. Worth, PLLC, Navarro Orthodontix of McAllen, PLLC, Navarro Orthodontix of Edinburg, PLLC, Navarro Orthodontix, PC, Dr. Carlos F. Navarro, RGV Smiles by Rocky L. Salinas, DDS, PA, Dr. Rocky Salinas, Westmoreland Dental, PA, Westmoreland Dental of Garland, PC, Westmoreland Dental and Orthodontics, PA, Dr. Scottie H. Nguyen, Dr. Victor M. Zurita, Antoine Dental Center a/k/a Antoine Group LLC, Dr. Paul Dunn, Harlingen Family Dentistry, PC, Dr. Juan Villarreal, M&M Orthodontics, PA, Dr. Scott Malone, and Dr. Diana Malone.

[4] Consolidation of the cases would be further complicated by the fact that several individually named Providers, including Westmoreland Dental of Garland, PC, Navarro Orthodontix, PC, and Dr. Stephen Chu DDS, have all recently filed petitions in the United States Federal Bankruptcy Court in the Northern District of Texas – Dallas Division, seeking protection from creditors, and wherein bankruptcy stays have been issued. Nevertheless, the same Providers who are in bankruptcy and their counsel in these cases, continue to pursue the bankrupt Providers' claims against Xerox and Texas. And Xerox continues to pursue claims against these bankrupt Providers in these cases that they seek to consolidate, despite the bankruptcy stays that are in place. Consolidation of these cases involving parties, some of whom are currently in bankruptcy, would further complicate matters and could potentially delay all proceedings.

claims, *plus* Texas HHSC's Injunction claim, *plus* Xerox's 27 third-party claims for contribution against the Providers to all be tried to the same jury and resolved by one final judgment. The consolidation of these six cases into a single case would undoubtedly promote jury confusion, prejudice and an unfair outcome to Texas's TMFPA Case against Xerox and Texas HHSC's Injunction Case. *See Id.* ("Because analysis of the evidence...demonstrates that significant jury confusion and undue prejudice would result from a trial of this particular group of twenty plaintiffs, we hold that the trial court abused its discretion in consolidating this group for trial").

### 2. Consolidation would not promote judicial economy.

All six cases have already been specially assigned to this Court by agreement of the parties. Accordingly, the benefit of having all six cases proceed in an organized and efficient manner in the same Court, and eliminating the risk of having inconsistent rulings by different judges in different courts, has already been achieved without the need for consolidation. Additionally, coordinated hearings can be, and already have been, efficiently scheduled and conducted addressing multiple motions filed in different cases addressing issues among the parties, without the need for consolidation.[5]

Indeed, all of the 27 individual Providers named in the six cases are being represented in these cases by the same two lawyers: Mr. Ray and Mr. Green. Likewise, the Xerox Parties are being represented by Mr. Nichols and Mr. Webber. Consolidation

---

[5] Indeed, just last week on September 4, 2014, parties and their counsel appeared before the Court in a single hearing addressing both Texas' Application for Temporary Injunction filed in the Texas HHSC Injunction Case on August 26, 2014 and Xerox's Motion for Protective Order filed in the Texas TMFPA Case against Xerox on July 21, 2014. Consolidation of the cases is not necessary to promote such judicial economy.

will not decrease the cost of litigation nor prevent any possible delay in the proceedings. *See* Xerox Motion at p. 7 (Xerox has not addressed how consolidation would avoid jury confusion and promote judicial economy, nor has Xerox identified specific ways in which consolidation would decrease the cost of litigation or avoid delay of proceedings).

### 3. Consolidation will be prejudicial to Texas.

This Court, along with other Travis County District Courts, have consistently held that equitable and common law defenses, including waiver, estoppel, concepts of comparative fault, and responsible third party liability do not apply to Texas's TMFPA claims and such concepts cannot be introduced or asserted by defendants during trial. See Exhibit A, Order from The Honorable Judge Yelenosky granting Plaintiffs' Traditional and No-Evidence Motion for Partial Summary Judgment on Defendants' Waiver Defense; Exhibit B, Order from The Honorable Judge Yelenosky granting Plaintiffs' Traditional Motion for Partial Summary Judgment on Defendants' Equitable Defenses; Exhibit C, Order from Judge John K. Dietz on Cross-Motions for Summary Judgment granting, *inter alia*, Plaintiffs' Motion for Partial Summary Judgment on Defendants' Defenses to the Texas Medicaid Fraud Prevention Act at 3-4 ("The Court finds that equitable defenses and defenses or limitations found in the Texas Civil Practices and Remedies Code do not apply to the Plaintiffs' claims under TMFPA"); Exhibit D, Order from Judge Lora Livingston on Motions for Summary Judgment granting, *inter alia*, Plaintiffs' Traditional Motion for Partial Summary Judgment on Certain Defenses (ratification, failure to mitigate, good faith, industry practice, proximate cause and intervening/superseding acts) and Plaintiffs' No-Evidence Motion for Partial

Summary Judgment as to All Defendants (waiver and selective enforcement) at 2-3; and Exhibit E, Order from Judge Suzanne Covington granting Plaintiff's First Amended Motion for Partial Summary Judgment.

Allowing the Xerox Parties and Providers to Consolidate Texas's TMFPA case with other cases involving common law claims, where all claims would be tried to the same jury and damages awarded accordingly, would indeed allow the Xerox Parties and Providers to assert equitable and common law defenses and introduce such concepts as comparative fault and responsible third-party liability and contribution into the same jury trial, addressing Texas's TMFPA claims. Consolidating these cases into a single case would circumvent this Court's and other Travis County Court's consistent holdings that equitable and common law defenses and concepts do not apply to the TMFPA and allowing such would cause jury confusion and be substantially prejudicial to Texas.

Whatever judicial economy or convenience that may be gained (if any) is far outweighed by the very real and likely risk of an unfair outcome because of jury confusion and prejudice that would result from consolidating all six cases together into a single case.

C.      **Texas' TMFPA Case and Texas HHSC's Injunction Case Against Xerox Do Not Have Common Questions of Law and Fact With Each Other Nor With The Other Four Provider Cases.**

For cases to be consolidated, they must involve common questions of law or fact. TEX. R. CIV. P. 174(a). Conversely, a case may be severed to divide a lawsuit into independent suits that may be resolved separately, such that the severed claims could be

independently asserted in separate lawsuits, with separate, final judgments. TEX. R. CIV. P. 41; *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996).

Texas's TMFPA Case against Xerox involves a cause of action that arose prior to Texas HHSC's May 9, 2014 termination of Xerox as the outside contractor responsible for conducting prior authorization reviews for Texas Medicaid. See Texas's TMFPA Petition at ¶ 8 (alleges unlawful acts occurred, at a minimum, during the January 1, 2004 to March 1, 2012 time period). Questions of law and facts surrounding Texas's TMFPA claims involve whether Xerox committed unlawful acts in violation of various provisions of the TMFPA, including whether Xerox knowingly made misrepresentations of facts to Texas Medicaid when it represented that it had qualified individuals conducting reviews of prior authorization requests.

Whereas, the cause of action in Texas HHSC's Injunction Case arose when HHSC terminated Xerox and Xerox retained Confidential Information, including protected health information when it vacated the premises, in violation of the Data Use Agreement entered into between HHSC and Xerox. See Texas HHSC's Verified Petition and Application for Temporary and Permanent Injunction. The questions of law and facts surrounding Texas HHSC's Injunction Case narrowly focus on HHSC's ownership of Confidential Information, Xerox wrongly retaining the Confidential Information in violation of the Date Use Agreement and the imminent and irreparable harm resulting from Xerox's misconduct, justifying injunctive relief. See Id.

The questions of law and fact in the Texas TMFPA Case are separate and distinct from the narrow questions of law and fact in Texas's HHSC Injunction Case. The claims

in these two cases are independent causes of action, properly filed as separate cases and should not be consolidated. *See Liberty Nat'l*, 927 S.W.2d at 629.

The Texas TMFPA Case and the Texas HHSC Injunction Case do not contain common questions of law or fact with each other, as described above, nor with the other four Provider Cases separately filed against Xerox. In the four Provider Cases filed against Xerox, seven providers are each asserting 9 separate common law claims: fraud, breach of contract, promissory estoppel, negligent hiring, negligent supervision, negligence, negligent misrepresentation, gross negligence and misrepresentation of fiduciary property. See *e.g.*, Harlingen First Amended Petition at ¶¶ 43-72. These questions of law are not common questions to claims asserted in either Texas' TMFPA Case or Texas HHSC's Injunction Case.

## III. CONCLUSION

Consolidation of six separate cases into a single case for trial will not promote judicial economy, or convenience but will create an unwieldy single case promoting jury confusion and prejudice. Texas' TMFPA Case and Texas HHSC's Injunction Case are independent causes of action and were properly filed as separate lawsuits. Common questions of law and fact do not exist between and among all six cases and the cases should not be consolidated.

WHEREFORE, the State of Texas, by counsel, respectfully requests the Court to Deny the Xerox Parties' Partially Unopposed Motion to Consolidate and for all other relief just and proper in the premises.

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JOHN B. SCOTT
Deputy Attorney General for Civil Litigation

RAYMOND C. WINTER
Chief, Civil Medicaid Fraud Division
State Bar No. 21791950
raymond.winter@texasattorneygeneral.gov

MARGARET MOORE
Deputy Chief, Civil Medicaid Fraud Division
State Bar No. 14360050
margaret.moore@texasattorneygeneral.gov

REYNOLDS B. BRISSENDEN
Managing Attorney, Civil Medicaid Fraud Division
State Bar No. 24056969
reynolds.brissenden@texasattorneygeneral.gov

Assistant Attorneys General
Office of the Attorney General
Civil Medicaid Fraud Division
P.O. Box 12548  MC 056-1
Austin, Texas  78711-2548
512.936.1709
512/400/-812 fax

**ATTORNEYS FOR THE STATE OF TEXAS**

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument has been sent by electronic service and email on September 8th, 2014 to the following:

| | |
|---|---|
| *via fax - 512.495.6930 and* <br> *email – andrew.weber@kellyhart.com* <br><br> Andrew Weber <br> Kelly Hart <br> 301 Congress Avenue, Suite 2000 <br> Austin, Texas 78701 <br><br> *Counsel for Xerox Defendants* | *via fax – 214.571.2932* <br> *email – rwalters@gibsondunn.com* <br><br> Robert C. Walters <br> Gibson, Dunn & Crutcher, LLP <br> 2100 McKinney Avenue, Suite 1100 <br> Dallas, Texas 75201 <br><br> *Counsel for Xerox Defendants* |
| *via fax – 521.708.1002* <br> *email – enichols@beckredden.com* <br> *ccowan@beckredden.com* <br><br> Eric J. R. Nichols <br> Christopher R. Cowan <br> Beck Redden <br> 515 Congress Avenue, Suite 1750 <br> Austin, Texas 78701 <br><br> *Counsel for Xerox Defendants* | *via fax –713.951.3720* <br> *email – cwebb@beckredden.com* <br> *cpeiffer@beckredden.com* <br><br> W. Curt Webb <br> Constance H. Pfeiffer <br> Beck Redden, LLP <br> 1221 McKinney Street, Suite 4500 <br> Houston, Texas 77010 <br><br> *Counsel for Xerox Defendants* |
| *via fax – 512.457.9066* <br> *email – jray@r-alaw.com* <br><br> Jason Ray <br> Riggs, Aleshire & Ray, P.C. <br> 700 Lavaca, Suite 920 <br> Austin, Texas 78701 <br><br> **Counsel for Intervenors** | *via fax – 409.832.8577* <br> *email – hartgr@wgttlaw.com* <br> *matoups@wgttlaw.com* <br><br> E. Hart Green <br> Mitchell A. Toups <br> Weller, Green, Toups & Terrell, LLP <br> P. O. Box 350 <br> Beaumont, Texas 77704-0350 <br><br> *Counsel for Intervenors* |

REYNOLDS B. BRISSENDEN

# EXHIBIT A

CAUSE NO. D-1-GV-11-000740

| | | |
|---|---|---|
| The STATE of TEXAS ex. rel. | § | IN THE DISTRICT COURT OF |
| RICARDO GONZALEZ and JOSE G. | § | |
| ESPINOZA, each individually, | § | |
| and on behalf of the STATE of | § | |
| TEXAS, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CARLOS D. MEGO, M.D., PEDRO | § | |
| MEGO, M.D., SUBBARAO YARRA, M.D., | § | |
| YAMIL W. AUDE, M.D. each individually | § | |
| and d/b/a VALLEY HEART | § | |
| CONSULTANTS, P.A., and VALLEY | § | |
| HEART CONSULTANTS, P.A., | § | 201st JUDICIAL DISTRICT |
| Defendants. | | |

## ORDER GRANTING PLAINTIFFS' TRADITIONAL AND NO-EVIDENCE MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' WAIVER DEFENSE

ON THIS DAY came before the Court for consideration Plaintiffs' Traditional and No-Evidence Motion for Partial Summary Judgment on Defendants' Waiver Defense ("Motion") and Defendants' response in opposition to same, and;

The Court having reviewed and considered the arguments, summary judgment evidence, statutes and case law cited therein as well as having reviewed and considered the arguments of counsel, hereby finds that Plaintiffs' Motion should be granted as a matter of law. It is therefore;

ORDERED Plaintiffs' Traditional and No-Evidence Motion for Partial Summary Judgment on Defendants' Waiver Defense should be and hereby is granted.

Signed this ___ day of _____, 2013.

_____
District Court Judge

11

# EXHIBIT B

CAUSE NO. D-1-GV-11-000740

Filed in The District Court
of Travis County, Texas

SEP 30 2013

At _____ ____.____ M.
Amalia Rodriguez-Mendoza, Clerk

| | | |
|---|---|---|
| The STATE of TEXAS ex rel. RICARDO GONZALEZ and JOSE G. ESPINOZA, each individually, and on behalf of the STATE of TEXAS, Plaintiffs, | § § § § § § § | IN THE DISTRICT COURT OF |
| vs. | § § § | TRAVIS COUNTY, TEXAS |
| CARLOS D. MEGO, M.D., PEDRO MEGO, M.D., SUBBARAO YARRA, M.D., YAMIL W. AUDE, M.D. each individually and d/b/a VALLEY HEART CONSULTANTS, P.A., and VALLEY HEART CONSULTANTS, P.A., Defendants. | § § § § § § § § | 201st JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFFS' TRADITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' EQUITABLE DEFENSES

ON THIS DAY came before the Court for consideration Plaintiffs' Traditional Motion for Partial Summary Judgment on Defendants' Equitable Defenses ("Motion") and Defendants' response in opposition to same, and;

The Court having reviewed and considered the arguments, summary judgment evidence, statutes and case law cited therein as well as having reviewed and considered the arguments of counsel, hereby finds that Plaintiffs' Motion should be granted as a matter of law. It is therefore;

ORDERED Plaintiffs' Traditional Motion for Partial Summary Judgment on Defendants' Equitable Defenses of estoppel, laches, limitations and failure to mitigate damages, should be and hereby is granted.

Signed this 30 day of September, 2013.

_____
District Court Judge

9

# EXHIBIT C

Notice sent: Final Interlocutory None
Disp Parties:_____
Disp code: CVD / CLS
Redact pgs:_____
Judge___JKD___ Clerk___MVM___

DC    BK11063 PG20

CAUSE NO. D-1-GV-04-001288

| | | |
|---|---|---|
| THE STATE OF TEXAS ex rel. ALLEN JONES, | § § § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| V. | § | 250TH JUDICIAL DISTRICT |
| | § | |
| JANSSEN, L.P., JANSSEN PHARMACEUTICAL, INC., ORTHO-MCNEIL PHARMACEUTICAL, INC., MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, JANSSEN-ORTHO, LLC, and JOHNSON & JOHNSON, INC., | § § § § § § § § § | Filed In The District Court of Travis County, Texas MAR – 3 2011 AMC At_____2:45__M. Amalia Rodriguez-Mendoza Clerk |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

On February 23, 2011, the Court heard Defendants' Traditional Motion for Summary Judgment, Defendants' No Evidence Motion for Summary Judgment, and Plaintiffs' Traditional and No Evidence Motions for Partial Summary Judgment. The Court has considered the motions, the responses, the summary judgment evidence, and the arguments of counsel. Plaintiffs' objections to the summary judgment attached to Defendants' Reply is SUSTAINED. With respect to Defendants' Objections to the Evidence Attached to Plaintiffs' Motions for Summary Judgment, Defendants' Objections in Section I are SUSTAINED. Defendants' objections in Sections II, III, and IV are moot because those motions for partial summary judgment were not submitted to the Court. As to Defendants' Objections to Excerpts from the Deposition of Curtis Burch, the Court OVERRULES those objections; however, the Court has considered Mr. Burch's testimony as it is. Plaintiffs' characterization of that testimony in the Response is considered only as argument.

## DEFENDANTS' TRADITIONAL MOTION FOR SUMMARY JUDGMENT

Defendants moved for traditional summary judgment on the following grounds:



1



1. Plaintiffs' claim based on a false certification of compliance with the FDCA is preempted;

2. Plaintiffs' TMFPA claims for restitution and penalties fail because the conduct alleged does not constitute an "unlawful act" under TMFPA;

3. Plaintiffs' TMFPA claims also fail because Plaintiffs cannot proved that any Risperdal reimbursements resulted from Defendants' alleged unlawful acts;

4. Plaintiffs' common law claims fail as a matter of law;

   a) Plaintiffs' common law claims for fraud and negligent misrepresentation cannot be sustained for the same reasons that their TMFPA claims fail:
   b) Plaintiffs' equitable claims for monies had and received cannot be sustained;
   c) Plaintiffs' fiduciary duty claims cannot be sustained because plaintiffs cannot prove defendants engaged in any conduct that influenced TMAP Developers' decision-making with respect to the TMAP algorithm.

The Court has considered the summary judgment evidence and finds that material fact issues preclude summary judgment; therefore, Defendants' Traditional Motion for Summary Judgment is DENIED.

## DEFENDANTS' NO EVIDENCE MOTION FOR SUMMARY JUDGMENT

Defendants also filed a no evidence motion for summary judgment on the following grounds:

1. Plaintiffs' claims for damages and penalties under TMFPA fail as a matter of law because they have no evidence of any "unlawful act" committed by any defendant;

2. Plaintiffs' claims for restitution and/or damages under the TMFPA and for common law fraud and negligence fail as a matter of law because Plaintiffs have no evidence of causation;

3. Plaintiffs' claim for monies had and received fails because they have no evidence that Defendants' possess monies belonging to the State;

4. Plaintiffs have no evidence that Defendants encouraged or assisted anyone in breaching any fiduciary duty owed to the State;

2



The Court has considered the summary judgment evidence and finds that material fact issues preclude summary judgment; therefore, Defendants' No Evidence Motion for Summary Judgment is DENIED.

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' DEFENSE OF WAIVER[1]

Plaintiffs move for summary judgment on Defendants' defense of waiver on the basis that there is no evidence that a State official, with authority to execute a waiver, made an express renunciation of a known right. Having considered the summary judgment evidence, the Court finds that Defendants have failed to raise a fact issue; therefore, the Court GRANTS this motion.

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' DEFENSES TO THE TEXAS MEDICAID FRAUD PREVENTION ACT

Plaintiffs move for summary judgment on Defendants' defenses of: producing cause, proximate cause, cause-in-fact, comparative fault, contributory negligence, justifiable or reasonable reliance, limited recovery to actual losses, failure to mitigate damages, and Chapter 41 limitations of damages.

1. Plaintiffs contend that the common law defenses of producing cause, proximate cause, cause-in-fact, comparative fault, and contributory negligence do not apply to Plaintiffs' statutory claims TMFPA because they are not articulated in the Act itself.

2. Plaintiffs move for summary judgment on Defendants' defense that Plaintiffs' claims are barred because Plaintiffs cannot establish that they justifiably and/or reasonably relied on alleged misrepresentations or concealments by Defendants. Plaintiffs contend that reliance is not an element of their TMFPA claims, rather a denial of an element of fraud and negligent misrepresentation.

3. Plaintiffs also move for summary judgment on Defendants' defense of failure to mitigate damages and the grounds that TMFPA does not require the State to mitigate damages and that the equitable doctrine of mitigation does not apply to the State as a sovereign.

---

[1] All of Plaintiffs' motions were both traditional and no evidence motions for summary judgment. The defenses of indispensable parties and condition precedent have been dropped from Defendants' pleadings; therefore, these grounds are not addressed here.

3



4. Plaintiffs finally move for summary judgment on the ground that CPRC Chapter 41 does not apply to Plaintiffs' TMFPA claims

The Court finds that equitable defenses and defenses or limitations found in the Texas Civil Practices and Remedies Code do not apply to Plaintiffs' claims under TMFPA. Summary judgment is GRANTED on those grounds. The Court finds that Defendants are stating an incorrect standard of causation for claims under TMFPA; therefore, summary judgment is GRANTED on that ground. Finally, the Court finds that reliance is not an element of a claim under TMFPA; therefore, summary judgment is GRANTED on that ground.

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' PREEMPTION AND CONSTITUTIONAL DEFENSES

Plaintiffs move for summary judgment on Defendants' defenses of: preemption, equal protection, and barring of claims by Texas Department of Health regulations.

1. Plaintiffs contend that their claims under TMFPA are not preempted by the Federal Drug and Cosmetics Act and accompanying regulations, i.e. a manufacturer's compliance with FDA regulations does not shield the manufacturer from liability under State law.

2. Plaintiffs' TMFPA claims are not barred by Texas Department of State Health Services regulations because there is no indication in the regulations that they are intended to bar the State of Texas from enforcing TMFPA.

3. Plaintiffs' enforcement of TMFPA does not violate the Equal Protection Clauses of the United States and Texas Constitutions. Defendants have no evidence of discriminatory enforcement.

The Court finds that Plaintiffs' TMFPA claims are not barred by state or federal statutes, regulations or constitutions; therefore, the Court GRANTS Plaintiffs' motion for summary judgment.

4



All relief not granted herein is DENIED.

**Signed this** ___3rd___ **day of March, 2011.**

**JOHN K. DIETZ**
**JUDGE PRESIDING**

I, AMALIA RODRIGUEZ-MENDOZA, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on ___-23-13___

AMALIA RODRIGUEZ-MENDOZA
DISTRICT CLERK
By Deputy:

EXHIBIT D

Filed In The District Court
of Travis County, Texas

DEC 13 2010

At _____ 9:50 A M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GV-08-001566

| | | |
|---|---|---|
| THE STATE OF TEXAS<br><br>*ex rel.*<br><br>VEN-A-CARE OF THE FLORIDA KEYS, INC.<br><br>*Plaintiffs,*<br>v.<br><br>ALPHARMA USPD f/k/a BARRE-NATIONAL, INC., PUREPAC PHARMACEUTICAL CO., ACTAVIS MID ATLANTIC LLC, ACTAVIS ELIZABETH LLC.<br><br>PAR PHARMACEUTICAL, INC., PAR PHARMACEUTICAL COMPANIES, INC.<br><br>WATSON PHARMACEUTICALS, INC., WATSON PHARMA, INC., f/k/a SCHEIN PHARMACEUTICAL, INC., RUGBY LABORATORIES, INC., OCLASSEN PHARMACEUTICALS, INC., MARSAM PHARMACEUTICALS, INC., and ANDRX PHARMACEUTICALS, INC.<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF<br><br><br><br>TRAVIS COUNTY, TEXAS<br><br><br><br><br><br>419TH JUDICIAL DISTRICT |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Notice sent:  Final   interlocutory   None

Disp Parties:_____

Disp code:  CVD / CLS

Redact pgs:_____

Judge _____   Clerk _____



–1–

On November 8TH AND 9TH, 2010, came on to be heard: Plaintiffs' Traditional Motion for Partial Summary Judgment on Certain Defenses (ratification, failure to mitigate, good faith, industry practice, proximate cause and intervening/superseding acts); Plaintiffs' No Evidence Motion for Partial Summary Judgment as to All Defendants (waiver and selective enforcement); Plaintiffs' Motion for Summary Judgment on Defendants' Vagueness Defense; the Defendants' Joint Motion for Partial Summary Judgment on Pre-2005 TMFPA Claims; Defendants' Motion for Partial Summary Judgment as to "Concealment" and "Failure to Disclose" Claims Based on the VDP Questionnaire; Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.'s Motion for Summary Judgment; the Motion of Alpharma USPD, Inc., Purepac Pharmaceutical Co., Actavis Mid Atlantic LLC, and Actavis Elizabeth LLC for Summary Judgment; and Plaintiffs' Objections to the Reply Brief in Support of the Actavis Defendants' Motion for Summary Judgment. The State of Texas, Relator, Par Defendants and Actavis Defendants all appeared by and through their respective counsel.

Having considered the pleadings, evidence and the arguments of counsel, the Court ORDERS:

1.  Plaintiffs' Traditional Motion for Partial Summary Judgment on Certain Defenses (ratification, failure to mitigate, good faith, industry practice, proximate cause and intervening/superseding acts) is GRANTED.

–2–



2. Plaintiffs' No-Evidence Motion for Partial Summary Judgment as to All Defendants (waiver and selective enforcement) is GRANTED.

3. Plaintiffs' Motion for Summary Judgment on Defendants' Vagueness Defense is GRANTED.

4. Defendants' Joint Motion for Partial Summary Judgment on Pre-2005 TMFPA Claims is DENIED.

5. Defendants' Motion for Partial Summary Judgment as to "Concealment" and "Failure to Disclose" Claims Based on the VDP Questionnaire is DENIED.

6. Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.'s Motion for Summary Judgment is DENIED.

7. The Motion of Alpharma USPD, Inc., Purepac Pharmaceutical Co., Actavis Mid-Atlantic LLC, and Actavis Elizabeth LLC for Summary Judgment is DENIED.

8. Plaintiffs' Objections to the Reply Brief in Support of the Actavis Defendants' Motion for Summary Judgment are SUSTAINED.

Signed this 13th day of ~~November~~ December, 2010.

Lora Livingston
Judge Presiding

–3–



APPROVED AS TO FORM ONLY:

_Margaret Moore_
_____
Margaret Moore
Attorney for the State of Texas


_Rand Riklin_     w/ permission
_____
Rand Riklin
Attorney for Relator


_Paul K. Dueffert_     w/ permission
_____
Paul K. Dueffert
Attorney for the Par Defendants


_Shannon Ratliff_     w/ permission
_____
Shannon Ratliff
Attorney for the Actavis Defendants



I, AMALIA RODRIGUEZ-MENDOZA, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on   2-25-13

AMALIA RODRIGUEZ-MENDOZA
DISTRICT CLERK
By Deputy:



-4-

# EXHIBIT E

CAUSE NO. GV0-02327

| | | |
|---|---|---|
| THE STATE OF TEXAS | § § § § | IN THE DISTRICT COURT OF |
| *ex rel.*, | § | |
| VEN-A-CARE OF THE FLORIDA KEYS, INC. | § § § | |
| Plaintiffs | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| DEY, INC., ROXANE LABORATORIES, INC., and WARRIK PHARMACEUTICALS CORPORATION, | § § § § § § | |
| Defendants | § | 53RD JUDICIAL DISTRICT |

## ORDER ON PLAINTIFFS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

On this 29th day of July 2003, came on to be heard Plaintiffs' First Amended Motion for Partial Summary Judgment. The Court has considered the motion, the response, the summary judgment evidence, the pleadings and the arguments of counsel. Plaintiffs' First Amended Motion for Partial Summary Judgment is GRANTED.

SIGNED this 15th day of August 2003.

_____
Suzanne Covington
Presiding Judge

